**STATE of Maine**

v.

**Richard TELLIER.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1987.
Decided May 28, 1987.

James E. Tierney, Atty. Gen., Wayne S. Modd, Garry L. Greene (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Thomas J. Connolly (orally), Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

Richard Tellier appeals from a judgment of conviction entered by the Superior Court, Cumberland County, upon a jury verdict of guilty of manslaughter, 17–A M.R.S.A. § 203 (1983 & Supp.1986). Tellier contends (1) that the trial court improperly excluded expert testimony offered to challenge the credibility of certain extra-judicial admissions of the defendant concerning the killing of Linda Russell, and (2) that he was deprived of a fair trial because certain portions of an exhibit were improperly read to the jurors during their deliberations. Because we agree with Tellier's second argument, we vacate the judgment.

## I. Facts

On May 23, 1985 Linda Russell's body was discovered in her apartment at 145 Cumberland Avenue in Portland. She had been manually strangled sometime during the previous twelve hours. Subsequently Tellier was charged with murder under the provisions of 17–A M.R.S.A. § 201(1)(A) (1983). The State's case against Tellier relied heavily upon certain extra-judicial admissions made by Tellier to Catherine R. and Sandra B., both ex-girlfriends of Tellier. Each testified, in varying degrees of detail, that Tellier told them he had killed Linda Russell. Catherine R., at the behest

of Portland police officers, reduced her account of Tellier's admissions to a statement typed by police and signed by her. This statement was used by the State at trial to refresh her memory on the witness stand. Certain portions of the statement were also admitted as State's exhibit 12. Catherine R.'s statement was later read in full to the jury during its deliberations even though it contained inadmissible references to Tellier's conviction for a prior violent criminal act and inadmissible references to Tellier's admissions made to other people who did not testify at trial.

Tellier's defense strategy was essentially two-fold: (1) to establish that someone else might have committed the crime, and (2) to show that the extra-judicial admissions made to his ex-girlfriends were not true. Relative to the second point, the defense attempted to show why Tellier had made these "false admissions." Defense counsel attempted to establish through the testimony of his ex-girlfriends that Tellier's motivation for making the admissions was based on a desire to manipulate and control the women. To help bolster the theory of false admissions, the defense offered the testimony of Dr. Steven Penrod, an associate professor of psychology and apparently an expert in the psychology of false confessions.[1] His testimony was offered to provide background and to educate the jury on the phenomenon of false confessions in order to help it evaluate the validity of Tellier's extra-judicial admissions in light of the interpersonal relationships between Tellier and his ex-girlfriends.[2] After an extensive voir dire, the trial court excluded the testimony.

At the conclusion of the five day trial, the jury deliberated 18 hours, finally rendering a manslaughter verdict.

---

**1.** Dr. Penrod's qualifications as an expert in the area of false confessions were not elaborated upon at trial. The State stipulated only as to Dr. Penrod's qualifications as an expert in the area of psychology generally.

**2.** The defense sought to establish that Tellier falsely admitted the crime to Catherine R. primarily in order to motivate her to take full responsibility for their two children. With respect to Sandra B., defense counsel attempted to show that Tellier falsely confessed in order to distance himself from their developing relationship. Some of the testimony at trial suggested that Sandra B. took their relationship much more seriously than did Tellier.

## II. Dr. Penrod's Testimony

The trial court did not state with particularity the rule or rules of evidence that it relied upon to exclude Dr. Penrod's testimony. Moreover, the State made no formal motion to exclude the testimony following the voir dire. In its brief on appeal the State argues that the testimony was inadmissible under M.R.Evid. 402, 403 or 702. Whatever the precise ground for exclusion, Tellier did preserve the issue for appeal by making an offer of proof. Unless the trial court clearly erred or abused its discretion, however, the evidentiary ruling will stand. *See State v. Anaya*, 438 A.2d 892, 894 (Me.1981); Field & Murray, *Maine Evidence* § 702.1, at 171 (1976).

■ The defendant's main theory in presenting Dr. Penrod's testimony was to establish that he had a motive other than guilt to confess the crime to his ex-girlfriends.[3] An essential aspect of Dr. Penrod's testimony was that in the context of a sensational, widely reported murder case occurring in a metropolitan area, false confessions are a known phenomenon that may occur. Dr. Penrod offered no opinion with respect to whether Tellier's admissions were in fact false, nor did he examine Tellier or inform himself of Tellier's psychological profile. He merely testified that based on his understanding of the Tellier murder case,[4] he could not rule out the possibility that the admissions were false. Dr. Penrod knew of no empirical studies with respect to the frequency of false confessions in cases of this type. The defendant contends that Dr. Penrod's testimony was critical because it would have provided the jury with background information about false confessions in general. Aided by this background information, argues Tellier, the jury would have been better able to evaluate the credibility of the admissions.

■ M.R.Evid. 702 gives to the trial court discretion with respect to whether expert testimony should be made available to a jury. The rule provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Thus, as we noted in *State v. Flick*, 425 A.2d 167, 170 (Me.1981):

The presiding justice may exclude an expert's opinion under M.R.Evid. 702 if he finds that it would not be within the expert's specialized knowledge or would not be helpful to the jury. He may also exclude it if he finds it irrelevant under M.R.Evid. 401 and 402, or if its probative value would be outweighed by the countervailing considerations of M.R.Evid. 403.

In our view, Dr. Penrod's testimony was properly excluded by the trial court under M.R.Evid. 403 because its probative value was substantially outweighed by the danger of confusing the issues and of misleading the jury that admission of the testimony would have generated.

The defendant contends that he should be given wide latitude in presenting his defense, especially when the State's case hinges on the credibility of extra-judicial admissions. Any evidence that would assist a jury in evaluating credibility, argues Tellier, should be admitted. We agree with

---

**3.** Defense counsel also elicited testimony from Dr. Penrod concerning the voluntariness of Catherine R.'s statement to the police. Catherine R. testified that she was under the influence of alcohol and marijuana when she gave her statement and that she felt pressured by the police when the statement was reduced to written form. Dr. Penrod's testimony described generally the possibility of involuntary statements being made under circumstances of police coercion. His views were not directly connected to the specific facts and circumstances of Catherine R.'s statement. Dr. Penrod's testimony concerning coercive techniques of interrogation and its effects on those interrogated was too vague, abstract and speculative to be of assistance to the jury and thus was properly excluded by the trial court pursuant to M.R. Evid. 403.

**4.** Dr. Penrod did not hear Catherine R.'s or Sandra B.'s testimony. He was provided with a variety of written materials and statements of witnesses by defense counsel.

Tellier that a defendant should be given wide latitude in presenting evidence relevant to his defense. Dr. Penrod's testimony, however, amounted to nothing more than an assertion that false confessions do occur. His testimony was so abstract, vague and speculative that its relevance and probative value was virtually nil. The court acted within sound judicial discretion in excluding Dr. Penrod's testimony.

### III. Readback of Exhibit

■ Tellier next argues that he was deprived of a fair trial because prejudicial and inadmissible portions of the written statement signed by Catherine R.'s were read to the jurors during their deliberations. Because Tellier failed to move for a mistrial when the prejudicial reading occurred, we review the issue presented under the obvious error standard of M.R.Crim.P. 52(b) and M.R.Evid. 103(d). *See State v. Dube,* 522 A.2d 904, 907 (Me.1987). In the circumstances of the case at bar we conclude that the reading of Catherine R.'s statement was patent and serious error. That the error was inadvertent does not diminish its obviousness or its seriousness. The question remains whether the error deprived Tellier of a fundamentally fair trial. *Id.* We conclude that it did.

Catherine R. went to the Portland police station on August 21, 1985 and told police officers, *inter alia,* that Tellier had told her that he had killed Linda Russell. An officer reduced her statement to typewritten form. Tellier apparently told Catherine R. on two occasions about the killing three to five weeks prior to the statement being reduced to written form. The statement included a reference to a previous criminal conviction sustained by Tellier:

> I first met Rick Tellier three years ago at 8 Sherman Street. He had just got out of prison for stabbing someone in the throat and chest.

The statement goes on to describe the details of Tellier's admissions with respect to the killing of Linda Russell as well as describing several other admissions about the

killing allegedly made by Tellier to others, some of whom did not testify. The statement is four pages in length, single-spaced, and signed by Catherine R. on each page. The statement is also signed by a Detective DeRice.

The State called Catherine R. as a witness to relate the admissions made by Tellier. The State used Catherine R.'s prior statement during her testimony to refresh her memory on certain details of the killing. Sometimes, after examining her statement, Catherine R.'s memory would be refreshed and she would testify consistently with the statement. On two occasions, however, she stated that the relevant portions of her statement did not refresh her memory. The prosecutor offered for admission in evidence only those portions of the statement that Catherine R. could not currently recall.[5] The prosecutor stated that he would delete from the statement those portions not offered in evidence. Although the court referred to the "statement" being admitted, it is clear from the record that only portions were actually offered as evidence. Unfortunately, neither counsel nor the court caused the inadmissible, highly prejudicial material to be deleted from the written statement.

Shortly after the jury retired to deliberate, it sent a request to the court that exhibit 12, Catherine R.'s statement, be read to them. The court reporter read exhibit 12 to the jury in its entirety, without interruption, including most notably the reference to Tellier's previous prison term for "stabbing someone in the throat and chest." Defense counsel then requested the trial court to give "some kind of curative instruction" and noted that "I don't know how we can get a fair trial now." No specific curative instruction was requested nor did counsel move for a mistrial.

■ During a subsequent jury appearance the court instructed the jury not to consider in its deliberations any prior conviction of the defendant. Defense counsel

---

5. No issue has been raised on appeal concerning the admissibility of those portions of the statement that were offered by the prosecutor. We

intimate no opinion upon the offer or subsequent ruling thereon.

made clear that the instruction with respect to the prior conviction was sufficient, but declined to acquiesce in the court's failure to mention any of the other damaging portions of the statement, particularly those portions relating to extrajudicial admissions allegedly made by Tellier to others who did not testify at trial.[6] The State argues that defense counsel deliberately chose not to move for a mistrial and affirmed the sufficiency of the curative instruction with equal deliberation. In the face of these tactical decisions, the State contends, the defendant cannot now argue on appeal that he was denied a fair trial. We recognize, of course, that a defendant has the right "to 'retain primary control over the course to be followed in the event of ... error,' " *State v. Flick*, 495 A.2d 339, 344 (Me.1985) (quoting *United States v. Dinitz*, 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976)), and that defense counsel's election not to seek a mistrial following the reading of the statement renders the error unpreserved. That election, however, does not preclude the defendant from presenting a claim of obvious error on appeal.

Under the obvious error standard we must apply our "best judgment to all the circumstances of the case at hand" to determine whether the reading of Catherine R.'s statement to the jury was prejudicial error tending to produce manifest injustice, *State v. True*, 438 A.2d 460, 467 (Me.1981) (quoting *State v. Baker*, 409 A.2d 216, 219 (Me.1979)), and whether there exists a "reasonable possibility" that a different verdict would have resulted if the jury had not been exposed to the prejudicial portions of the statement. *State v. Borucki*, 505 A.2d 89, 94 (Me.1986). We conclude that the disclosure during the jury's deliberations of Tellier's previous conviction for a violent criminal act, including the inflammatory details, was so highly likely to prejudice the jury as to deprive him of a fair trial.

The entry is:

Judgment vacated.

All concurring.

---

6. Because we determine that the jury's exposure to Tellier's prior conduct requires vacating the judgment of conviction, we need not and do not consider the potential effect on the jury of exposure to these other extra-judicial admissions of guilt.