2004 ME 152

**In re SARAH C.**

Supreme Judicial Court of Maine.

Argued: Sept. 22, 2004.
Decided: Dec. 17, 2004.

Stephen C. Smith (orally), Bangor, for appellant.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Matthew Pollack, Asst. Atty. Gen., Patrick Downey, Asst. Atty. Gen., Augusta, for appellee.

Amy L. Faircloth, Pelletier & Faircloth, P.A., Bangor, Guardian ad Litem.

Dennis Hamrick, Bangor, for mother.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA,[1] ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] The father of Sarah C. appeals from a jeopardy order entered in the District Court (Bangor, *Russell, J.*), pursuant to 22 M.R.S.A. §§ 4002(6), 4035 (2004). The father contends that the court erred in admitting expert testimony regarding the likelihood that, if he had sexually abused one of his daughter's friends, he would sexually abuse his own daughter. Although we agree with the father that some of the expert's testimony was improperly admitted, the record reveals that the error did not affect the court's decision and was therefore harmless. Accordingly, we affirm the judgment.

[¶ 2] The Department of Health and Human Services became involved with Sarah's family in 2003 following reports that the father had sexually abused one of Sarah's friends. Sarah was placed in Department custody, and later in the custody of her mother.

[¶ 3] A contested jeopardy hearing was held in January of 2004. *See* 22 M.R.S.A. § 4035. There was no evidence that the father had ever sexually assaulted Sarah. The Department did present evidence, however, that the father had sexually abused Sarah's friend, a young girl who spent a considerable amount of time with Sarah and the family. The Department also introduced the testimony of Dr. Jeffrey Hecker, a licensed psychologist, regarding the likelihood that the father would sexually abuse Sarah given his sexual abuse of her friend.

[¶ 4] Following the hearing, the court found by a preponderance of the evidence that the father had sexually abused Sarah's friend, but that he had not sexually abused Sarah. In concluding that Sarah was in jeopardy from the father within the meaning of 22 M.R.S.A. § 4002(6),[2] the court found that Sarah's friend, whom the court found the father did sexually abuse, was treated by the father as his own daughter; that Sarah's friend was the same age as Sarah's current age when the sexual abuse was committed; that the father's sexual abuse of Sarah's friend took place at times when Sarah was close by and entailed a substantial risk that Sarah would discover the sexual acts; and that the father romanticized his relationship

---

1. Although not present at oral argument, Justice Dana is participating pursuant to M.R.App. P. 12(a), which states in part: "A qualified justice may participate in a decision even though not present at oral argument."

2. Title 22 M.R.S.A. § 4002(6) (2004) provides:
   **6. Jeopardy to health or welfare or jeopardy.** "Jeopardy to health or welfare." or "jeopardy" means serious abuse or neglect, as evidenced by:
   **A.** Serious harm or threat of serious harm;
   **B.** Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;
   **C.** Abandonment of the child or absence of any person responsible for the child, which creates a threat of serious harm; or
   **D.** The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

with Sarah's friend in a manner consistent with an adult relationship. This appeal followed the court's finding of jeopardy.

[¶ 5] The father contends that the court improperly admitted the testimony of Dr. Hecker, and that his testimony contaminated the court's determination of jeopardy. Although some of Dr. Hecker's testimony was relevant to the issue that was before the court, we agree with the father that portions of the opinion testimony should have been excluded by the court. We are not persuaded, however, that the court's jeopardy determination was based on anything other than properly admitted evidence.

[¶ 6] The crux of Dr. Hecker's testimony was that the father posed a statistically identifiable risk of sexually abusing Sarah given his sexual abuse of Sarah's friend. Dr. Hecker reviewed the Department's records as to the father and Sarah's friend, but did not interview the father himself. Dr. Hecker's testimony assumed that the allegations of sexual abuse by Sarah's friend were true.

[¶ 7] Dr. Hecker's opinion testimony was based on his review of various research sources. One study showed that thirteen percent of child sexual abusers are arrested again for sexual abuse of a child within five years, twenty-five percent are arrested again within ten years, and forty to forty-five percent are arrested again at some point in their lifetimes. Other research relied on by Dr. Hecker revealed that men who commit multiple sexual offenses, men who show sexual arousal to pre-pubescent-aged children, men who are psychopathic, men who commit offenses against male victims, and men who never establish a stable relationship with an adult woman are more likely to reoffend. Dr. Hecker further testified that because the father was in a pseudo father/daughter relationship with the victim and still sexu-

ally abused her, there is a higher risk that he would abuse his own daughter, with whom he had a true father/daughter relationship.

[¶ 8] Dr. Hecker also cited two studies that determined what percentage of men who had sexually abused children outside of the home had also abused their own children. In one study of men who sexually abused children outside of their homes, twenty percent of the men had also abused a child within their home, i.e., a member of their own family. In another study, twenty-seven percent of the men sexually abused a child living in their home in addition to sexually abusing a child outside of the home. Based on this information, Dr. Hecker concluded that there was a statistical fifteen to twenty-seven percent overall risk that, in this case, the father would sexually abuse his own child.

[¶ 9] No study, however, correlated to the precise situation present in this case. Dr. Hecker could cite to no study that determined the likelihood that a male who had sexually abused a child who was not a family member would *subsequently* sexually abuse a child who was a family member. Dr. Hecker agreed that he had taken a "number of other studies and sort of extrapolated information here and there to come up with a professional estimate." He also acknowledged that there was no peer review of his method of analysis, and that no studies existed to test his hypothesis. The court denied the father's motion to strike Dr. Hecker's testimony.

[¶ 10] The father contends that the court erred in admitting Dr. Hecker's testimony because it lacked scientific reliability. We review the trial court's admission of expert witness testimony for clear error and abuse of discretion. *State v. Fleming*, 1997 ME 158, ¶ 14, 698 A.2d 503, 507. The admission of expert testimony is

governed by M.R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The proponent of expert testimony must satisfy two requirements: first, the testimony must be relevant pursuant to M.R. Evid. 401, and second, the testimony must assist the jury in understanding the evidence or determining the existence of a fact in issue. *Fleming*, 1997 ME 158, ¶ 14, 698 A.2d at 507; *State v. Williams*, 388 A.2d 500, 504 (Me.1978).

[¶ 11] To meet the two-part standard for the admission of expert testimony, the testimony must also meet a threshold level of reliability. *Id.*; *State v. Irving*, 2003 ME 31, ¶ 12, 818 A.2d 204, 208. Although "general scientific acceptance" is not required to reach that threshold, *State v. Boutilier*, 426 A.2d 876, 879 (Me.1981); *Williams*, 388 A.2d at 503, it is often the case that "the easiest way this burden can be met is to show the acceptance of the theory, method, etc. by the expert community to which it relates," Field & Murray, *Maine Evidence* § 702.4 at 361 (2000 ed. 1999).

[¶ 12] In *State v. Tellier*, 526 A.2d 941 (Me.1987), for example, the trial court excluded the testimony of a psychologist regarding police-coerced confessions. *Id.* at 942. The psychologist had not examined the defendant, nor had he read a psychological profile of the defendant. *Id.* at 943. In upholding the decision of the trial court to exclude the testimony, we noted that the psychologist's testimony amounted merely to "an assertion that false confessions do occur," and that it was not tai-lored to the specific facts and circumstances of the case. *Id.* at 943 & n. 3, 944. We concluded that the trial court acted within its discretion in excluding the testimony because it was "so abstract, vague and speculative that its relevance and probative value was virtually nil." *Id.* at 944.

[¶ 13] In this case, the father's propensity to sexually abuse female children is relevant to the issue of whether he poses a risk of serious harm to his daughter. *See* 22 M.R.S.A. § 4002(6)(A). General testimony regarding the recidivistic tendencies of sex offenders could be reliable and therefore helpful to the fact-finder. Indeed, Dr. Hecker's testimony that there is a higher risk that the father would abuse his own daughter because he abused his daughter's friend with whom he had a father/daughter relationship is relevant and admissible. Dr. Hecker's testimony regarding the *statistical likelihood* that the father would sexually abuse his daughter, however, much like the testimony in *Tellier*, did not meet the threshold requirement of reliability. Dr. Hecker never spoke with the father to determine his psychological profile, nor did he tailor his conclusion to the facts of this case. He admitted that no research results corresponded to the facts of this particular case, that his numeric values included mere inferences based on extrapolations from studies, that no peer review of his analysis had ever been performed, and that no studies had ever tested his hypotheses. Thus, Dr. Hecker's testimony essentially amounted to an unsupported assertion that, in his view, there is a quantifiable likelihood that sexual offenders will reoffend against their own children. Accordingly, Dr. Hecker's testimony was not sufficiently reliable to be admitted as expert testimony in this case.

[¶ 14] Nevertheless, based on the entire record in this case, we conclude that

the error in admitting Dr. Hecker's testimony was harmless. "An error is harmless if it is highly probable that the error did not affect the fact[-]finder's judgment." *State v. Kalex,* 2002 ME 26, ¶ 22, 789 A.2d 1286, 1292 (citation omitted). The decision of the court reveals that the court's conclusion of jeopardy was not based on Dr. Hecker's opinion on the statistical likelihood that the father would sexually abuse Sarah. Rather, the court based its determination of jeopardy to Sarah on four findings of fact: (1) the father viewed and treated Sarah's friend as his daughter; (2) Sarah was the same age that Sarah's friend was when the father committed the sexual abuse; (3) in sexually abusing Sarah's friend when Sarah was close by, the father greatly risked that Sarah would discover the sexual acts; and (4) the father romanticized his relationship with Sarah's friend in a manner consistent with a relationship with an adult. These findings are amply supported in the record, and are not based on Dr. Hecker's testimony. Rather, they demonstrate that the court relied on evidence in the record separate and distinct from the statistical evidence presented by Dr. Hecker to conclude that the father's sexual abuse of Sarah's friend placed Sarah in jeopardy.

The entry is:

Judgment affirmed.

