2008 ME 21

**Elizabeth FOSTER et al.**

v.

**ORAL SURGERY ASSOCIATES, P.A. et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2007.
Decided: Jan. 31, 2008.

Philip P. Mancini, Esq. (orally), Barry T. Woods, Esq., Dummond & Drummond, LLP, Portland, ME, for Elizabeth Foster and other plaintiffs.

James E. Belleau, Esq., Skelton, Taintor & Abbott, Auburn, ME, for Oral Surgery Associates, P.A. and other defendants. Craig Fonatine, Esq. (orally), Cramer, Alissi & Fontaine, P.C., Hartford, CT, for Oral Surgery Associates, P.A. and other defendants.

Christopher C. Taintor, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for amicus curiae Maine Medical Association.

Richard L. O'Meara, Esq., Nicole L. Bradick, Esq., Murray, Plumb & Murray,

Portland, ME, for amicus curiae Maine Trial Lawyers Association.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN. JJ.

GORMAN, J.

[¶ 1] Elizabeth Foster appeals from a judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) in favor of Oral Surgery Associates, P.A. Foster argues that: (1) the court erred by disqualifying Foster's expert witness; (2) the court erred by granting Oral Surgery Associates's motion for judgment as a matter of law; (3) the court's application of 24 M.R.S. § 2905(1)(A) (2007) is unconstitutional; (4) this Court should establish a more specific standard of care for informed consent for physician-researchers; and (5) section 2905(1)(A) should be interpreted to allow non-medical expert testimony. We affirm the Superior Court's judgment.

## I. BACKGROUND

[¶ 2] This case arose from a series of consolidated cases against Oral Surgery Associates (OSA)[1] and several oral and maxillofacial surgeons for various claims associated with the failure of Vitek teflon proplast implants the defendants inserted in the plaintiffs' temporomandibular joints to relieve joint malfunction.[2] In the original complaint in this case, the plaintiffs alleged: (1) product liability; (2) breach of warranty; (3) negligence;[3] and (4) loss of consortium. The negligence claim was based largely on the allegation that OSA, as physicians who had published a retrospective study of their patients with implants, knew of, but did not convey, the risks associated with the Vitek implants.

[¶ 3] The Superior Court *(Delahanty, J.)* granted OSA's motion for summary judgment on all of the patients' claims for failure to file notice of a claim within the three-year statute of limitations pursuant to the Health Security Act. *See Brawn v. Oral Surgery Assocs. (Brawn I)*, 2003 ME 11, 819 A.2d 1014; 24 M.R.S. § 2902 (2007).

[¶ 4] In *Brawn I*,[4] we affirmed the court's entry of summary judgment on all

---

1. "OSA" will be used to refer to all of the defendants.

2. *See Dutil v. Burns*, 674 A.2d 910 (Me.1996); *Dutil v. Burns*, 1997 ME 1, 687 A.2d 639; *Brawn v. Oral Surgery Assocs. (Brawn I)*, 2003 ME 11, 819 A.2d 1014; *Brawn v. Oral Surgery Assocs. (Brawn II)*, 2006 ME 32, 893 A.2d 1011; *Farnum v. Oral Surgery Assocs.*, 2007 ME 140, 933 A.2d 1267.

3. The negligence claim included several more specific claims: (1) failure to warn; (2) failure to provide adequate information for informed consent; (3) false representations of material fact; (4) fraudulent concealment; (5) failure to appropriately monitor patients' conditions; and (6) failure to diagnose and treat patients once failure of the implant was known to OSA.

4. *Brawn I* subdivided the plaintiffs' negligence claims into five categories: (A) "a breach of the duty to adequately warn the patient prior to the operation"; (B) "fraudulently concealing from the patient during the three-year period following the operation that the oral surgeon had previously breached his duty to adequately warn the patient prior to the operation"; (C) "fraudulently concealing from the patient after the three-year period following the operation that the surgeon had previously breached his duty to adequately warn the patient prior to the operation"; (D) "a breach of the duty to adequately advise the patient as to the risks to his/her health of leaving the implants in place during the period after the operation but prior to the three years immediately preceding the filing of the notice of claim"; and (E) "a breach of the duty to adequately advise the patient as to the risks to his/her health of leaving the implants in place during the period after the operation and within three years of the filing of the

claims except the Category B (fraudulent concealment) claims of Foster and one other plaintiff, and all Category E claims described as a "breach of the duty to adequately advise the patient as to the risks to his/her health of leaving the implants in place during the period after the operation and within three years of the filing of the notice of claim." *Id.* ¶¶ 19, 26, 30, 819 A.2d at 1025, 1027–28.

[¶ 5] In *Brawn I*, however, we neither expressly vacated nor affirmed a second summary judgment motion granted in favor of OSA by the Superior Court that found several patients' breach of duty to warn claims no longer viable because they "learned of the dangers to their health more than three years before their notices of claim." *Id.* ¶ 3, 819 A.2d at 1018–19. On remand, the Superior Court interpreted *Brawn I* as having affirmed the court's grant of the second summary judgment motion. *See Brawn v. Oral Surgery Assocs. (Brawn II)*, 2006 ME 32, ¶¶ 8, 9, 893 A.2d 1011, 1014–15.

[¶ 6] Additionally, on remand the court granted the surgeons' new motions for summary judgment against several plaintiffs who had failed to file their notices of claim within three years after removal of their implants. *See* id. ¶ 7, 893 A.2d at 1014. The court found that the surgeons did not have a duty to warn the plaintiffs of the risks of the implants after removal of the implants. *See id.*

[¶ 7] On appeal, in *Brawn II*, we affirmed both judgments. *Id.* ¶ 21, 893 A.2d at 1017.

## II. FOSTER'S PRESENT ACTION

[¶ 8] Elizabeth Foster is one of the original plaintiffs who brought claims against OSA and several other oral and maxillofacial surgeons. Foster's case was chosen to go to trial after our disposition

of *Brawn I* and *Brawn II*. As determined by the Superior Court, Foster's remaining claims were Category B (fraudulent concealment of surgeon's breach of duty to adequately warn the patient before surgery) and Category E (breach of duty to adequately advise the patient of the risks of leaving the implants in after the operation) claims only. Both claims necessarily involve the issue of informed consent.

[¶ 9] At trial, Foster proffered the testimony of Professor Ronald Green, who holds a Ph.D. in ethics and bioethics and teaches at Dartmouth Medical School, to give an expert opinion regarding informed consent. The court conducted a voir dire examination of Green, outside the presence of the jury, to determine the relevance of his testimony and his qualifications to testify as an expert on informed consent. After voir dire, and upon consideration of OSA's motion to exclude, the court excluded Green's testimony.

[¶ 10] Subsequently, OSA, pointing out that Green's testimony was Foster's only informed consent evidence, moved for judgment as a matter of law. Foster conceded that Green was her only witness on the standard of care for informed consent. The court granted the motion and entered judgment for OSA on all claims.

[¶ 11] Foster filed this appeal. Additionally, both the Maine Trial Lawyers Association and Maine Medical Association filed amicus briefs.

## III. DISCUSSION

[¶ 12] Foster's first argument on appeal is that the court erred by excluding Professor Green's testimony. We disagree.

[¶ 13] During the voir dire examination, Professor Green explained that he planned to testify, from an ethical view-

notice of claim." 2003 ME 11, ¶ 19, 819 A.2d      at 1025.

point, about what the standard of informed consent should have been in any clinical or research context both before and after OSA inserted the implants. Green testified that he had no actual knowledge or information about what oral or maxillofacial surgeons were doing with regard to informed consent at the relevant time. He explained that his opinion in this case was based on a consent document used by OSA, which he reviewed and found to be inadequate. Green acknowledged that he did not know what OSA actually did or what verbal components of informed consent were used by OSA. He also testified that the verbal components of informed consent are as important as the written components.

[¶ 14] After conducting voir dire of Green and reviewing OSA's motion to exclude, the court determined Green was not qualified to testify regarding informed consent in this case, saying:

> [w]hile he's certainly well qualified as to issues of ethics and knowledgeable as to informed consent, the information presented in the motion to exclude him and in the hearing so far certainly indicate that he's not qualified to give the required medical testimony that's required by both the case law and the statute in Title 24. . . .

[¶ 15] We review evidentiary rulings for abuse of discretion and clear error. *Me. Shipyard & Marine Ry. v. Lilley*, 2000 ME 9, ¶ 20, 743 A.2d 1264, 1269. The Superior Court's exclusion of Green's testimony was based on the requirements of section 2905 and on Maine case law regarding informed consent. Title 24 M.R.S. § 2905(1)(A) provides:

> No recovery may be allowed against . . . any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient . . . when: (A) The action of the [health care provider] in obtaining the consent of the patient . . . was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities.

Additionally, in the case the Superior Court recognized as the "leading case" on informed consent, we held that "the scope of a physician's duty to disclose is measured by those communications a reasonable medical practitioner in that branch of medicine would make under the same or similar circumstances and that the plaintiff must ordinarily establish this standard by expert medical evidence." *Woolley v. Henderson*, 418 A.2d 1123, 1131 (Me. 1980).[5]

[¶ 16] Because both the relevant statute and case law require evidence regarding the practice of medical professionals in the relevant field under similar circumstances and conditions, the court did not commit clear error or abuse its discretion by excluding Green's testimony. Green did not intend to, and could not, testify regarding the standard of care for informed consent for oral and maxillofacial surgeons under the same or similar circumstances as OSA because he was unaware of that standard. Instead, Green planned to opine about what the standard should be, as dictated by ethics. We find, therefore, that the court acted within the bounds of its discretion and did not commit clear error by excluding Green's testimony.

[¶ 17] Foster, as well as amicus Maine Trial Lawyers Association, argues that the Superior Court's decision that Green is "not qualified to give the required medical testimony," reads a requirement into section 2905(1)(A) that only medical experts

---

5. *Woolley v. Henderson* explicitly avoided construing section 2905 because the cause of action in the case arose before its enactment. 418 A.2d 1123, 1130 n. 5 (Me.1980).

are qualified to testify. The Superior Court, however, did not make that finding, rather it excluded Green's testimony because he purported to testify as an ethicist regarding what he believed the standard *should* be, not what the legal standard applicable to OSA actually was, relative to the relevant standards of practice among oral and maxillofacial surgeons. The court did not determine whether a non-medical expert who did have knowledge of the applicable standard could testify under section 2905. In affirming the Superior Court's exclusion of Green's testimony, we do not interpret section 2905(1)(A) as *requiring* the testimony of a medical expert. We find only that the Superior Court did not err in finding that Green was unable to provide the required testimony regarding the applicable standard of care.

[¶ 18] Our ruling, moreover, does not preclude an ethics expert from testifying about informed consent in another case. In this case, Green had neither the requisite knowledge of the extent of the defendants' communications with the patient, nor an understanding of the scope of informed consent standards relied upon by similarly situated oral surgeons.

■ [¶ 19] Foster's second argument on appeal is that the court erred in granting OSA's motion for judgment as a matter of law after it excluded Professor Green's testimony. We disagree.

■ [¶ 20] When reviewing an entry of judgment as a matter of law, we consider the evidence in the light most favorable to the non-moving party. *Currier v. Toys 'R' Us, Inc.*, 680 A.2d 453, 455 (Me.1996). Additionally, we find entry of "judgment as a matter of law is improper if *any* reasonable view of the evidence could sustain a verdict for the opposing party." *Id.*

■ [¶ 21] A plaintiff in an informed consent case must establish that the standard of care, based on the practice of health care professionals in the same field and community and under the same or similar circumstances, was breached by the defendant. When the court excluded Green's testimony, Foster had no other evidence to offer concerning the standard of care. Even taking the evidence in the light most favorable to her, we must find that Foster was unable to prove the standard of care, or breach thereof, and, therefore, that entry of judgment as a matter of law was not error.

■ [¶ 22] Foster's third argument on appeal is that section 2905(1)(A), as applied by the trial court, is unconstitutional under the "open courts" provision of the Maine Constitution. However, Foster failed to raise this issue before the Superior Court. An issue raised for the first time on appeal is not properly preserved for appellate review. *Teel v. Colson*, 396 A.2d 529, 533 (Me.1979). We have held that this rule is "controlling notwithstanding that the issue pertains to an alleged [constitutional] violation." *Id.* (quotation marks omitted). Because Foster failed to raise the issue of the constitutionality of section 2905(1)(A) before the trial court, we decline to reach it.

■ [¶ 23] Finally, Foster argues that we should establish a more specific standard of care for informed consent for doctors who are also researchers. We decline to do so.

[¶ 24] Section 2905(1)(A) provides that the standard of care shall be that practiced among members of the same profession "with similar training and experience situated in the same or similar communities." This language is unambiguous and must, therefore, be given its plain meaning. *See Kapler v. Kapler*, 2000 ME 131, ¶ 17, 755 A.2d 502, 508. Giving the "similar training and experience" language its plain meaning, physicians who are also researchers would be held to the same standard of care as other physicians in the field who have

similar research experience.[6] We find that the statute adequately provides for a standard of care that would be determined on a case-by-case basis, by considering the research and/or clinical experience of the physician whose actions or judgments are at issue.

The entry is:

Judgment affirmed.

**6.** In this case, the "research" performed by the defendant physicians consisted of one retrospective study of the effects of implants on patients within their practice.