MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 50
Docket:      Oxf-22-138
Submitted
  On Briefs:  October 19, 2022
Decided:     August 15, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

NICHOLAS J. CAPELETY

v.

KYLA R. ESTES

JABAR, J.

[¶1]  Nicholas J. Capelety appeals from a judgment entered by the District Court (South Paris, *Ham-Thompson, J.*), in which the court allocated parental rights regarding the parties' child and granted primary residence to Kyla R. Estes and defined rights of contact to Capelety.  *See* 14 M.R.S. § 1901 (2023); 19-A M.R.S. § 104(2023); M.R. App. P. 2B(c)(2).  Capelety contends on appeal that the court improperly restricted his ability to present his case by (1) imposing a time limit on his trial presentation that resulted in his being unable to cross-examine the guardian ad litem (GAL), (2) excluding certain of

---

* Although Justice Douglas was not available at the first conference at which the Court considered the case on the briefs, he was a sitting Justice qualified to act during the development of this opinion and participated in subsequent conferencing and the development of this opinion.  *See* M.R. App. P. 12(a).

2

his proposed exhibits, (3) permitting certain testimony from the GAL, and (4) denying his request to present a closing argument. He also challenges portions of the court's judgment as unsupported by the evidence. We conclude that any error was harmless and affirm the judgment.

## I. BACKGROUND

[¶2] Capelety and Estes have a child who was born in 2015. Capelety filed a complaint for determination of parentage, parental rights and responsibilities, and child support in the District Court on September 9, 2020. On Capelety's motion, a Family Law Magistrate (*Spooner, M.*) appointed a GAL. The GAL provided recommendations to the parties in January 2021 and submitted a final report in July 2021. On May 28, 2021, the same Family Law Magistrate issued a pretrial order indicating that the final hearing of the case would take one day.[1] Neither party objected to the pretrial order. The court (Rumford, *Ham-Thompson, J.*) held the final hearing on November 16, 2021. The hearing occurred during the COVID-19 pandemic, and therefore, some of the parties and witnesses appeared by video or phone.

---

[1] The pretrial order scheduled the final hearing for one day and indicated that Capelety had "+5" witnesses, Estes had "+4" witnesses, and the GAL had "+1" witness. The pretrial order listed the following issues for hearing: (1) parental rights and responsibilities, (2) uninsured medical expenses, (3) primary residence, (4) tax benefits, (5) medical insurance, (6) rights of contact, (7) actual/imputed income, (8) child support, and (9) attorney fees.

[¶3]  Although the final hearing was scheduled to begin at 8:30 a.m., it did not start until 9:26 a.m. because the parties, with the trial court's approval, chose to engage in a last-minute settlement discussion that proved unproductive.

[¶4]  At the beginning of the evidentiary portion of the hearing, the court explained, "The time will be equally divided between the parties, with the Court reserving one hour for the [GAL].  So that's time equally divided for direct and cross, so use your time wisely."  Neither party lodged an objection or asked how many hours and minutes they would be allotted.

[¶5]  Capelety presented four witnesses who were acquaintances or friends.  Estes, who was representing herself, and the GAL were given the opportunity to cross-examine the first four witnesses; Estes cross-examined three of the witnesses, and the GAL cross-examined one witness.

[¶6]  After Capelety had presented the testimony of his third witness, Estes asked the court, "How much time with the witnesses do they get, and then do I get . . . ?"  The court responded, "[I]t's evenly divided between the two of you—I'm keeping track of the time right now.  And when we resume at 1:00, I'll break it down and let you know how much time everyone has.  But clearly, at this time, [Capelety] is using the bulk of the time."

4

[¶7]   The trial court then heard testimony from Capelety, whose testimony ended just before the noon break.  At this point in the proceedings, the trial court indicated to Capelety that he had used up all his time and would not be able to cross-examine Estes or the GAL.  During Capelety's direct testimony, the court broke in to note for his attorney,

> And then just so you're aware, . . . for the first four witnesses, you used 46 minutes.  You're now an hour seven minutes into Mr. Capelety.  And so you're closely running out of time.  I'm not sure how long the lunch break is going to be, but you're almost out of all of your time, if I include [Estes's] time and [the GAL's] time.

Capelety's attorney responded, "Thank you, Your Honor."  After more of Capelety's direct testimony, the court stated, "We need to wrap this up.  You have used all of your time."  Capelety's attorney finished her remaining questions and made no objection.

[¶8]  The court then explained that the proceeding would break for lunch and reiterated that Capelety had used all his time and would not have time for additional direct or cross-examination unless extra time remained after Estes and the GAL completed their presentations.  Capelety's attorney asked, "to clarify, do you mean that there's no time for cross-examination?"  The court explained,

> That's correct.  You've used all of your time.  So your abilities to cross-examine  Ms. Estes,  call  any  additional  witnesses,  or

cross-examine any of her witnesses is over.  It's a . . . one-day trial.  And theoretically, both sides get approximately three hours by the time everything starts and finishes.  We took time to have settlement discussions.  And then you factor in the recess, you factor in the other cross-examination.  Ms. Estes used six minutes.  [The GAL] used four.  You've had the bulk of the time here.  And Ms. Estes has an opportunity to cross-examine your client, call her own witnesses to testify, and so does [the GAL].  So time is equally divided.  So at this time, you have run out of time, depending on how the rest of the day goes.

Capelety's attorney thanked the court and made no objection.  Following the noon time break, Capelety was cross-examined by Estes and the GAL.

[¶9]  Next, Estes testified and was cross-examined by the GAL only.  During her testimony, Estes testified, in part, that Capelety was "combative" and "aggressive" and that he had perpetrated "emotional, physical, financial, [and] sexual abuse" against her.  After Estes finished testifying and made clear that she did not plan to present any witnesses other than herself, the court again addressed the timing of the proceedings.  The court explained that Estes had thirty-nine minutes left and stated, "[T]hat also breaks into [the GAL's] time, so I'm going to give [the GAL] as much time as she needs, and then Ms. Estes, I will give you the opportunity to cross-examine [the GAL] if you want.  Then I may have questions for [the GAL].  And after all that, [Capelety's attorney], if there is any time available before 4, I will give you an opportunity to cross-examine."  Capelety did not object.

6

[¶10]  At the beginning of the GAL's testimony, the GAL moved to admit her final report in evidence.  Capelety objected "to the extent that some of the [GAL]'s recommendations" were based on the report or communications with Estes's proposed expert witness, whose testimony and report the court had excluded before trial.  Capelety also objected to the admission of the report on the ground that he would not be able to cross-examine the GAL.  The GAL explained that the proposed expert had been identified as someone Estes wanted the GAL to speak with as part of her investigation.  The GAL noted that she had received and reviewed the proposed expert's report—an analysis of the parties' text messages to one another—after completing her own report, and that it had not affected her recommendations.  Over Capelety's objection, the trial court admitted in evidence the GAL's report, as well as several printouts of text messages between the parties.

[¶11]  With the court's permission, the GAL initially testified in narrative fashion and thereafter responded to questions from the trial court.  In total, the GAL testified for nearly forty minutes.  She testified, in part, about her observations of an unhealthy dynamic of power and control between the parties.  She stated that Estes had "gone into detail about . . . the dynamics of physical, sexual, and emotional violence that was perpetrated on her during

their relationship."  The GAL also indicated that her investigation had not led her to believe that Capelety or the child were victims of domestic violence and that Capelety's testimony to that effect during the hearing was the first time she had heard that allegation.  She explained that she believed that Capelety's testimony demonstrated that he had not "made much progress" despite his completion of a four-hour domestic violence course and that perpetrators of domestic violence "typically . . . deflect onto their victims when they are at . . . a very early stage in—in not addressing—or taking accountability for their actions."  After Estes began cross-examining the GAL, Capelety raised an objection to the GAL's testimony about domestic violence on the ground that there was "nothing in . . . evidence . . . to support . . . these broad-stroke allegations" and that Estes did not testify regarding any domestic violence.  The court overruled the objection as untimely because Capelety did not object when the court asked the GAL questions about domestic violence between the parties.

[¶12]  The court then indicated that it was concluding the hearing because it was 4:00 p.m.  Capelety's attorney "put an objection on the record to not being able to cross-examine witnesses."  His attorney also requested that the court "reschedule [the matter] for even just an hour to finalize" it, and she

8

requested that the court permit the parties to submit written closing arguments. The court responded,

> With respect to your request for rescheduling this case for an hour, that request is denied. The Court was clear at the beginning that the time would be equally divided between the parties. How the parties chose to use their time was up to them. The Court further cautioned you as well as Ms. Estes as to the remaining time and gave you a warning as to running out of time, so no. In terms of closing argument, the Court doesn't need that. . . . With respect to your objection about not having the ability to cross-examine witnesses, again, you put on your case . . . and chose to present it in a manner that you did, and I don't know what witnesses are going to say or what information is going to be provided, but the Court doesn't have unlimited time. The pre-trial order said one hour [*sic*]. The parties wanted to engage in some discussions initially, and this is what we have. And as it worked out, [Capelety's attorney], you still had more time than Ms. Estes.

Ultimately, the hearing—excluding recesses—was five and a half hours long. Thus, setting aside one hour of time for the GAL, Estes and Capelety were to evenly split four and a half hours. Capelety used roughly two hours and twenty minutes, Estes used roughly one hour and forty minutes, and the GAL used roughly one hour and fifteen minutes.

[¶13] In March 2022, the court (South Paris, *Ham-Thompson, J.*) issued a judgment determining parental rights and responsibilities. The court found the following facts, which are supported by competent evidence admitted during the hearing, *see Hatch v. Anderson*, 2010 ME 94, ¶ 12, 4 A.3d 904:

- Capelety and Estes were in a relationship from 2014 to 2017. They have one child together, who was born in May 2015 and was six years old at the time of the hearing. The child has lived with Estes since birth. The child is in school and is generally healthy.
- Both parties have difficulty communicating effectively. Estes has a greater capacity to co-parent, but by the time of the hearing, the parties had shown no ability to co-parent successfully together. Estes frequently makes last-minute logistical changes to the visiting schedule; Capelety constantly and subtly derides Estes, cancels scheduled visitation frequently, and makes communication choices that indicate a greater concern for "maintaining control of the family dynamic" than for the child's emotional well-being.
- The parties' difficulty communicating and high level of conflict places strain on the child. The child's interests would be served best by one parent having most of the decision-making power.

[¶14] The court determined that "[t]he evidence compel[led it] to choose a parent in whom to vest most of the decision-making power, in order to reduce conflict." The court order allocated parental rights and responsibilities, with both parties having the right to make decisions when the child is in that parent's care but with Estes having the right to make final decisions in the event of a disagreement. The court order awarded to Estes primary residence of the child and awarded to Capelety rights of in-person contact on one evening per week and every other weekend from Saturday morning until Sunday evening, telephone contact "at all reasonable times," and video chats as often as twice per week. The court also made findings regarding the parties' incomes, completed a child support worksheet, and entered a child support order

requiring Capelety to pay Estes $714 per month in child support until the child turns eighteen.

[¶15]  Capelety timely filed a motion to reconsider, a motion for a new trial, and a motion to amend findings.  *See* M.R. Civ. P. 7(b)(5), 52(b), 59.  The court denied his motions to reconsider and for a new trial and, in large part, his motion for amended findings.[2]  Capelety filed a timely notice of appeal.  *See* 14 M.R.S. § 1901; 19-A M.R.S. § 104; M.R. App. P. 2B(c)(2).

## II.  DISCUSSION

[¶16]  The four issues that Capelety lists in his brief fall into two categories.  First, Capelety contends that the court abused its discretion by (1) improperly imposing a time limit on his trial presentation that prevented him from cross-examining Estes and the GAL, (2) excluding his proposed exhibits, (3) permitting the GAL to testify about domestic violence in the parties' relationship, and (4) denying his request to present a closing argument.[3]  Second, Capelety contends that the court made insufficient factual

---

[2]  The court granted Capelety's request to amend the contact schedule to expressly state that both parties could attend the child's school, sports, and extracurricular activities and events.  Estes had also filed a motion for reconsideration, which the court denied as untimely.

[3]  Estes asserts that Capelety failed to preserve his arguments regarding the court's time limitation and decision to admit evidence from the GAL regarding domestic violence.  "An issue raised for the first time on appeal is not properly preserved for appellate review."  *Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102.  To preserve an issue for appellate review, there must be "a

findings to support its ultimate conclusions and abused its discretion in determining parental rights and responsibilities, primary residence, and parent-child contact. We address only the time limitation placed upon Capelety and the effect it had on denying his opportunity to cross-examine the GAL, as we are unpersuaded by Capelety's additional contentions.[4] *See Richter v. Ercolini*, 2010 ME 38, ¶ 7 n.1, 994 A.2d 404.

## A.    Standard of Review

[¶17]    We review a court's management of a trial for an abuse of discretion. *See Seabury-Peterson v. Jhamb*, 2011 ME 35, ¶ 14, 15 A.3d 746

---

sufficient basis in the record to alert the trial court and the opposing party to the existence of the issue." *State v. Reeves*, 2022 ME 10, ¶ 35, 268 A.3d 281. In this case, Capelety created a sufficient basis in the record to alert the trial court and Estes that he took issue with the court's time limitation and decision to admit evidence from the GAL regarding domestic violence. Capelety expressly objected to the court's time limitation when he requested that the court set aside additional time to "finalize" the hearing and objected to the court's ruling that he could not cross-examine Estes and the GAL because he had run out of time. He also expressly requested that the court accept written closing arguments. Further, Capelety expressly objected to the GAL's testimony about domestic violence on the basis that the testimony assumed facts not in evidence. Although the court deemed this objection untimely and overruled it, the issue of whether that ruling at the time constitutes an abuse of discretion is nonetheless preserved for our review.

[4] Capelety makes two other arguments that we decline to address. First, he posits that the court erred when it stated that the GAL had a right to cross-examine witnesses and testify during the hearing. We decline to review this argument because Capelety is raising it for the first time on appeal. *See Foster*, 2008 ME 21, ¶ 22, 940 A.2d 1102 ("An issue raised for the first time on appeal is not properly preserved for appellate review."). Second, Capelety devotes a single sentence towards the end of his brief to an argument that the court's determinations regarding child support and tax exemptions were unsupported by the record. We deem that argument waived. *See, e.g.*, *Mehlhorn v. Derby*, 2006 ME 110, ¶ 11, 905 A.2d 290 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quotation marks omitted)).

(explaining that we "review a court's denial of a motion for a new trial for a clear and manifest abuse of discretion" (quotation marks omitted)); *State v. Wyman*, 2015 ME 1, ¶ 16, 107 A.3d 641 (explaining that we will uphold a trial court decision regarding the scope and manner of witness examination unless we identify an abuse of discretion); *Moody v. Haymarket Assocs.*, 1999 ME 17, ¶ 4, 723 A.2d 874 (explaining that we review evidentiary rulings for an abuse of discretion).

[¶18]　A court abuses its discretion if it "exceed[s] the bounds of the reasonable choices available to it." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.　We note that a determination of an abuse of discretion "does not equate to a finding of bad faith, intentional wrongdoing, or misconduct by the judge." *State v. Hussein*, 2019 ME 74, ¶ 17, 208 A.3d 752. "Trial judges are called upon to make multiple, swift decisions—in 'real' time— during the course of trials and hearings." *Id.*

[¶19]　Nonetheless, "[a] trial court ruling, even if in error, will not result in vacating the judgment if the error was 'harmless'—that is, if the error did not result in substantial injustice or affect substantial rights." *Guardianship of David P.*, 2018 ME 151, ¶ 12, 196 A.3d 896 (quotation marks omitted).　"The erroneous admission of evidence that affects a party's constitutional interests

is harmless if it is highly probable that admission of the evidence did not affect the judgment." *Banks v. Leary*, 2019 ME 89, ¶ 19, 209 A.3d 109 (quotation marks omitted). An error is harmless if competent evidence other than the challenged evidence supports the court's findings. *See In re Sarah C.*, 2004 ME 152, ¶ 14, 864 A.2d 162 (concluding that the error in admitting a witness's testimony was harmless because the trial court's conclusion relied on other facts not based on that testimony).

## B.    Review of the Court's Management of the Trial

[¶20] "A trial court has broad discretion to control the order and timing of presentation of evidence and to set and enforce reasonable time limits on testimonial hearings." *Dolliver v. Dolliver*, 2001 ME 144, ¶ 10, 782 A.2d 316. Indeed, pursuant to Maine Rule of Evidence 611(a), "The court must exercise reasonable control over the mode and order of examining witnesses and presenting evidence . . . ." However, Rule 611(a)(1) simultaneously mandates that the court exercise reasonable control over the mode and order of presenting evidence and witnesses to "[m]ake those procedures effective for determining the truth." The truth-seeking function of the court carries special weight in a matter involving a child's best interest because the court has an obligation to "discern as a wise, affectionate and careful parent what custody

arrangements will further the child's best interest." *Cloutier v. Lear*, 1997 ME 35, ¶ 8, 691 A.2d 660 (quotation marks omitted).

[¶21] Here, Capelety argues that he should have been allowed to cross-examine the GAL about her testimony and her report, to which he objected, and that the court's failure to allow him to do so was an abuse of discretion. By statute and by rule, a GAL's final written report is admissible in evidence and the GAL is subject to cross-examination regarding the report. *See* 19-A M.R.S. § 1507(5) (2023); M.R.G.A.L. 4(b)(7).[5] These provisions are premised on the notion that "the most effective challenge to the quality, completeness, or competence of a guardian ad litem's work will be accomplished through cross-examination of the GAL at trial." *Banks*, 2019 ME 89, ¶ 12, 209 A.3d 109 (quotation marks omitted). Further, "the right to cross-examine the GAL about the report has constitutional significance because it is part of the process that serves to protect parents' fundamental liberty interest to direct the care, custody, and control of their children." *Id.* ¶ 13

---

[5] Title 19-A M.R.S. § 1507(5) (2023) provides, "A guardian ad litem shall make a final written report to the parties and the court reasonably in advance of the hearing. The report is admissible as evidence and subject to cross-examination and rebuttal, whether or not objected to by a party."

Rule 4(b)(7) of the Maine Rules for Guardians Ad Litem provides, "A guardian ad litem shall provide a copy of any required final written report to the parties and the court at least 14 days in advance of the final hearing. The report is admissible as evidence and subject to cross-examination and rebuttal, whether or not objected to by a party."

(quotation marks omitted). In the context of the statutory admissibility of a GAL's report, due process requires "the right to introduce evidence and present witnesses, and the right to respond to claims and evidence." *Id.* (alteration and quotation marks omitted).

[¶22] We thus are faced with a close question in this matter about how a court may balance the need to manage a trial by enforcing time limits for presenting evidence against a party's claimed need to present potentially relevant testimony from a GAL to aid in the court in its truth-seeking function. There is nothing wrong with time limits generally. *See Dolliver,* 2001 ME 144 ¶ 10, 782 A.2d 316 ("We have previously approved judicial application of evidence time limits . . . .") Time limits are often based, as they were here, on the litigants' estimate of the time necessary to present their cases, and it is not uncommon for an attorney's estimate to be inaccurate. It can be challenging for a trial judge to keep attorneys within their estimated time and maintain an orderly court schedule while preserving each litigant's right to present a case that will allow the court to hear all evidence needed to help the court determine the facts. It is equally difficult for a trial attorney to anticipate how long a witness's direct testimony and cross-examination will take.

16

[¶23] Here, the parties raised no objection to the one-day limit set by the court in its pretrial order, and once set, such time limits should be fairly enforced. *See id.* ¶ 12 (holding that the trial court "did not abuse its discretion in refusing to . . . extend the agreed upon time limit" because the plaintiff had "ample opportunity" to present his case). The court here repeatedly reminded the parties of the time constraints throughout the trial and made a concerted effort to move the case forward within the time limits.[6]

[¶24] If time limits prove to be inaccurate or unreasonable, notwithstanding a court's effort to move the case along, counsel have an obligation to object in a timely fashion and to allow the court to exercise its discretion. *See Maloney v. Brassfield*, 251 P.3d 1097, 1105 (Colo. App. 2010) (deeming time constraints harmless where an appellant made no offer of proof of how excluding certain evidence would cause prejudice). Despite multiple opportunities, Capelety did not object at the outset of or during the trial, including when the court initially informed him that he would not be able to cross-examine the GAL; and he never made an offer of proof about what evidence he would offer through cross-examination.

---

[6] Although a hearing of this nature, with the number of potential witnesses indicated in the pretrial order, would be difficult to complete in five hours and thirty minutes, the parties and the GAL called far fewer witnesses than anticipated in that order.

[¶25]  At the same time, litigants should have a reasonable opportunity to present a sufficient case, both to allow the court to effectively determine the facts and to protect the interests of the litigants.  In this case, the court could have considered making other adjustments that might have afforded time for Capelety to cross-examine the GAL or rebut her testimony.  For instance, once it was apparent that Capelety had used up all of his allotted time by the lunch break, and Capelety had not yet cross-examined the GAL, the court could have curtailed the GAL's forty-minute testimony or even admitted the GAL report in in lieu of direct testimony and immediately moved to cross-examination rather than allowing lengthy and substantially duplicative narrative testimony from the GAL.  Capelety did not propose such adjustments, however, and, as noted, by the time he raised an objection to the constraint on his capacity to cross-examine the GAL, his time limit had expired.  However, with forty-three minutes remaining until the 4:00 deadline, as the court informed Capelety, there was still the possibility that he would have time to cross-examine the GAL.  The court explained to Capelety's attorney that it would give the GAL all the time she needed, and "after all that, . . . if there is any time available before 4, I will give you an opportunity to cross-examine."

[¶26]  Thus, this case could have been handled differently to avoid the issue now before us.  We need not determine, however, whether enforcement of the time limits in this case rose to level of an abuse of discretion because even if we were to accept Capelety's argument that it did, any such error would be harmless.

[¶27]  In reviewing the whole record in this case, we conclude that it is highly probable that any error in the court's admission of the GAL report without allowing Capelety to cross-examine the GAL did not affect the trial court's judgment.  *See Banks*, 2019 ME 89, ¶ 19, 209 A.3d 109; *see also In re Sarah C.*, 2004 ME 152, ¶ 14, 864 A.2d 162.  The trial court decided to vest most of the decision-making power in one parent to reduce conflict.  The trial court made this determination from its findings that the parents have no ability to co-parent due to their communication problems.  Even without the GAL's report or her testimony, the record contains overwhelming evidence of the parents' communication problems and how it has made them unable to co-parent their child.

[¶28]  In choosing one parent to make most of the decisions for the child, the trial court found that vesting decision-making power in the mother was in the best interest of the child.  In its findings, the trial court articulated its

concerns about the father's difficulty with processing information, noting his "very convenient lapses of memory when questioned about statements, behaviors, or incidents that would be unfavorable to him," while having a clear memory concerning actions and statements by the mother. The trial court also noted its concern that the father had engaged in multiple parenting classes and individual counseling yet still could not communicate effectively with the mother.

[¶29] Given the weight of the evidence beyond the GAL's testimony supporting the judgment, we conclude that it is highly probable that the court's enforcement of the time limits it established before the trial began did not affect the judgment. *See Banks*, 2019 ME 89, ¶ 19, 209 A.3d 109.

The entry is:

> Judgment affirmed.

---

Ashley T. Perry, Esq., Sanders, Hanstein & Carey, P.A., Farmington, for appellant Nicholas J. Capelety

Kyla R. Estes, appellee pro se

South Paris District Court docket number FM-2020-117
FOR CLERK REFERENCE ONLY