SAMUEL WOODBURY, *Appellant from a decree of the Judge of Probate, versus* SARAH S. HAMMOND.

A surety upon a guardian's bond has no right of appeal from the decree of a Judge of Probate, allowing a guardianship account, filed by the administratrix of the deceased guardian.

In 1842, W. was appointed guardian of the defendant by the Judge of Probate for the county of Cumberland, both guardian and ward residing, at the time, in Danville, then in that county. The guardian gave bond, returned an inventory, and subsequently sold, under a license, a part of his ward's real estate. In 1864, W. died at Danville; H. was appointed, by the Judge of Probate for Androscoggin county, administratrix of his estate, (which was duly represented insolvent,) and subsequently, H., as administratrix, filed in the Probate Court for the county of Cumberland, a guardianship account of W. : — *Held*,

1. That the Judge of Probate for the county of Cumberland had jurisdiction by virtue of c. 60 of the Public Laws of 1854;

2. That c. 87 of Public Laws of 1854, did not affect c. 60, so far as it relates to probate matters;

3. That the administratrix was the proper person to settle the account of guardianship; and,

4. That the representation of insolvency did not affect the course of proceedings.

Neither the insolvency of the guardian, or his estate, nor the lapse of six years after the ward attains his majority, will operate as a release from the guardian's liability to settle a final account, or absolve the guardian or his personal representative from the duty to account.

It is no objection that an account of guardianship is settled after the ward has become of age, so long as it embraces nothing except what accrued during his minority.

Mode of stating an account of guardianship.

APPEAL from the decree of the Judge of Probate for the county of Cumberland, allowing the guardianship account of the late William Woodbury, of Danville, in the county of Androscoggin, made and filed in said Probate Court, by Hannah Woodbury, as administratrix of the estate of the said William Woodbury.

In 1842, William Woodbury was appointed and qualified as guardian of the defendant, who lived in his family until she attained her majority. The guardian duly gave bond for the faithful performance of his duties, and also a bond to account for the sale of the real estate of his ward, the appellant being one of the sureties in each. The guardian returned an inventory, and sold, under a license, a part of his ward's real estate ; but never settled any account of his guardianship. The defendant became of age in March, 1853, and never had or requested any settlement with her guardian, prior to his death in March, 1864.

Hannah Woodbury, wife of William, was duly appointed administratrix of the estate of her husband, by the Judge of Probate for the county of Androscoggin, in May, 1864. In July following, the estate having been represented insolvent, commissioners of insolvency were appointed.

The defendant never presented any claim against the estate. In July, 1864, Hannah Woodbury, as administratrix, filed, with the Judge of Probate for this county, an account of the guardianship of said William Woodbury, wherein a balance was stated to be due from the guardian to the defendant, at the time she became of age, which account was examined by the Judge of Probate for this county, and a

part of the balance decreed by him to be allowed; and from this decree the appeal in this case was taken.

The reasons for the appeal were : —

1. Because the said Probate Court had no jurisdiction of said account, to allow the same, or to decree any sum to be due from said deceased guardian, or from his estate, to the said Sarah S. Hammond.

2. Because the said Hannah Woodbury, who filed said account, as administratrix of the estate of said William Woodbury, deceased, who was formerly guardian of said Sarah S. Hammond, had no right or authority of law, to present and make oath to said account.

.3. Because the said Hannah Woodbury, as administratrix as aforesaid, at the time of filing said account, had taken upon herself to administer upon the estate of said William Woodbury, deceased, in the county of Androscoggin, in this State, and was duly appointed thereto by the Judge of Probate for said county of Androscoggin, and represented said estate to be insolvent, and commissioners of insolvency on said estate had been appointed by the Judge of Probate for said county of Androscoggin.

4. Because said commissioners of insolvency were the proper and only original tribunal authorized by law, to examine and allow claims against the estate of said William Woodbury, deceased, late guardian as aforesaid.

5. Because that, long prior to the decease of the said William Woodbury, and before the filing of said guardianship account, the said Sarah S. Emerson, now Sarah S. Hammond, had arrived at the age of twenty-one years, and any legal and just claim which she may have had against said William Woodbury, in his lifetime, or his estate, since his decease, ought to have been presented before the commissioners of insolvency on said estate, for their determination and allowance.

6. Because the claim of the said Sarah S. Hammond, set forth in said account, and allowed by the Judge of Probate,

had been outstanding against said William Woodbury, (if the same had not been settled and paid over,) more than six years prior to his decease, and more than six years after said guardianship had ceased, and is therefore barred from recovery by law, by force of the statute of limitations in such case made and provided.

The following publication in full, of the Judge of Probate's opinion in this case, must find its justification in the importance of the principles therein so clearly enunciated, and in the fact of their being affirmed by this Court:

Upon the question of jurisdiction, I have no doubt, whether as regards the person to present the account or the authority of a Judge of Probate to pass upon the same, after the wards have arrived at full age.

Aside from the propriety, if not necessity, of allowing the executor or administrator of a deceased guardian to settle such an account, and the common practice relative thereto, so far as any decisions are concerned, they fully sustain the right claimed by the administratrix. See *Curtis* v. *Bailey*, 1 Pick., 198, where the administrator of the deceased surety of a guardian, was allowed to present and settle a guardian's account.

In New Hampshire the executor of a deceased guardian was held to be the proper person to settle such an account. *Kittredge* v. *Belton*, 14 N. H., 409; *Gregg* v. *Gregg*, 15 N. H., 490.

In *Pierce* v. *Irish*, 31 Maine, 254, the settlement of a guardian's account by the Judge of Probate, *after* the ward had arrived at full age, was upheld.

So far, however, as relates to transactions between the guardian and his late wards for the time subsequent to their majority, I do not think it competent for me to adjudicate.

It appears that Mr. Woodbury, as guardian of the minor children of George Emerson, deceased, received from said Emerson's administrator $314,37, being two-thirds of a

cash balance of $471,55 in his hands, on settlement of his
administration account, Dec. 20, 1842,           $314 37
There was also in the guardian's hands, according
to his inventory made Feb. 8, 1843, the following
personal estate belonging to his wards, viz., — A
sum received from N. Turner Bridge Co., $ 54,33
A balance due on note of J. Megquire,    172,94

                                      227 27

In all,                                     541 64

Of which ⅓, of course, belonged to each ward, $180,54⅔.

On May 22, 1847, he sold, under a license from Probate
Court, a piece of land belonging to his wards, for $1200, of
which each ward's share was $400.

The duty of a guardian in regard to the management of
funds of his ward, coming to his hands, is well settled and
familiar. "If he neglects to put the ward's money at interest,
but negligently, and for an unreasonable time, suffers it to
lie idle, or mingles it with his own, the Court will charge
him with simple interest, and, in case of gross delinquency,
with compound interest." 2 Kent's Com., 230.

He should have a "reasonable time in which to invest,"
but what is reasonable must, of course, depend upon the
circumstances of each case where the question arises.

In this case it does not appear precisely when the guard-
ian received the several sums composing the $541,64. He
was entitled to the amount paid by the administrator, after
the 20th Dec., 1842, and the evidence tends to show that
he received it not long after that date.

The $54,33 and $172,94, were in his hands on the 8th
Feb., 1843, though, how long he had had them is not shown.
The $1200 was, or should have been received on 22d May,
1847.

In view of the testimony in regard to the use of the
money, I think it would be giving the guardian reasonable
time, to require him to charge himself with interest upon the
$541,64, (or $180,54, to each ward,) from March 1, 1843,

Woodbury v. Hammond.

and, upon the $1200, ($400 to each,) from July 1, 1847, to the arrival of the several wards at full age, in the manner hereinafter indicated.

As to the rents and profits of the real estate of his wards, so long occupied and enjoyed by the guardian, there is no evidence from which to ascertain the amount paid by him for repairs, taxes, &c., but the net income is estimated by witnesses to have been about $50. Of this amount the widow of Mr. Emerson, never having had her dower assigned, being entitled to one-third, the guardian should be charged with $36 per annum, or $12 for each ward, until she became of full age, with interest as indicated hereinafter.

While thus allowing what was expended upon the real estate, by way of repairs, taxes, &c., and requiring of the guardian only the net amount of rents and profits, the claims for large sums expended in the finishing and improvement of old buildings, and the erection of new ones, must be regarded in a different light, and as governed by rules of law. I see no way in which to allow them.

As an investment, the expenditure in either case, seems to me, not that frugal management of his ward's estate required of a guardian by law, but both injudicious and unwarranted. Supposing it to have been, in each case, wholly unobjectionable as an investment in real estate, on any other ground, this very important question arises,—whence did he derive his authority thus to invest? "The guardian must not convert the personal estate of the infant into real, without the direction of the Court of Chancery." 2 Kent's Com., 230. See, also, R. S. of Maine, 1841, c. 110, § 23, with the requirements of which there is no evidence that the guardian of these wards ever complied.

Again, it is in evidence that, some months before he was appointed guardian, he had expended quite a large amount upon the old set of buildings. He certainly had no authority to charge money thus expended, to minors, who afterwards became his wards. After his appointment as guardian, it was several years before he had in his hands an amount

of money belonging to his wards, equal to what he had thus expended,—" some $800" in all.

When he petitioned for license to sell land of his wards, he did not represent any indebtedness on their part to himself or others, but, " the proceeds to be placed at interest for the benefit of said minors," is the language used by him. All these circumstances, moreover, corroborate the statement made by Mrs. Woodbury, that this expenditure was made for his own comfort and convenience, and with the declared intention of purchasing the premises.

When the new buildings were erected, one of the wards had been of age more than a year, the second one became of age soon after they were commenced and before their completion, and both had ceased to be members of their guardian's family. So that, so far as relates to these two, it could not properly be said that there was any expenditure on, or investment in the new buildings, by a guardian for wards.

But, even if the expenditure could have been regarded as a judicious investment in real estate, so far as relates to the third ward, then a minor, was the guardian authorized thus to invest any part of the $1200? Her funds from other sources had long since been exhausted.

In the license, by virtue of which he sold the land which produced this sum, he is directed " to account for the proceeds (of sale) according to the requirements of law." The law, then, required him " to apply the proceeds to the purposes contemplated by his license ;" that is, his license being based upon his petition, to put the money at interest for the benefit of his wards. (And we have already seen that he never obtained the authority required by c. 110, § 23.)

The minors having lived and been supported in the family of their guardian for many years, he is entitled to a reasonable compensation for board and clothing, and to charge to them all cash advances made by him on their account.

Whether he did or did not make specific charges to them for such items does not appear, or rather, perhaps, it does

not appear in evidence that he did make such charges, but it is equally doubtful whether he made any such charges against himself for rent, interest, &c. And any impressions which Mrs. Woodbury had in regard to his not intending to charge the wards with board and clothing, are to be considered in connection with the fact that he, at the same time, was having the use of this property, both real and personal, and apparently allowing them nothing for such use and enjoyment.

It is hardly probable, in view of all the testimony, and absence of testimony, that it was his intention to furnish board and clothing, and *give* them to his wards absolutely and without any compensation. And, as he is to be held to account strictly for all funds received by him, and rents and profits, as well as interest thereupon, he should be allowed to charge for board and clothing, as before stated.

While I have no doubt but, that during a portion of the time spent by them in their guardian's family, the wards earned enough by their personal services to pay, and perhaps more than cover their board and clothing, during their earlier years, it is hardly to be expected that they could have done so, nor does the testimony make it at all certain that they did so.

There may be allowed, therefore, the sum of one dollar per week, for board and clothing of each of the wards, from Nov. 1, 1842, as follows, viz.:—in the case of Sarah S., until she was 14 years of age, and, in the other cases, until each was 15 years of age. The guardian to charge to each ward the amount expended by him for her, for board and tuition when at school, cash advanced, or goods furnished during her minority. The charge for commissions cannot be allowed, it being clearly forfeited under the provisions of R. S., c. 67, § 18.

The accounts are to be made up substantially as follows :

The guardian is to be charged with the amount of personal estate belonging to each ward, as it came to his hands, with rent of real estate, as it fell due, and interest at the

end of each year. Deduct from this amount the expenses of the year, and the balance forms a new principal to which the interest thereupon is to be added at the close of the following year, and that year's expenses deducted as before, and so on as long as there are annual expenses to deduct. From the time when they cease, simple interest to be cast upon the balance then due, up to the date of the ward's majority.

The full Court to make such a disposition of the case as law and justice required.

*Record*, for the appellant.

*S. & J. W. May*, for the appellee.

BARROWS, J.—What is the position voluntarily assumed by one who places his name as surety upon a guardian's bond to the Judge of Probate?

He undertakes and promises on his own personal responsibility, and for the more perfect protection and security of the ward, that the individual appointed as guardian, among other things, will faithfully discharge his trust, and will render just and true accounts of his guardianship when by law required.

Can the surety, then, be heard in that forum at every step of the proceedings, or upon a final adjustment of the guardian's account, to allege that the accounts, which he himself has promised shall be "just and true," are not so? Is he at liberty thus to intervene for his own security, necessarily creating expense to those for whose security in this very respect he has placed his name upon the bond? Not at all. The question whether he has sufficient confidence in the integrity, accuracy and responsibility of the guardian whose surety he becomes, to abide and be responsible for his doings in the execution of his trust, is to be settled by the surety with himself before he assumes the position. When he has executed the bond he has made himself individually responsible to the Judge of Probate and those interested in

the ward's estate, for the faithful and correct discharge of the guardian's duty, and he, at least *in that forum* shall not be heard to question it. It is upon the good faith and pecuniary responsibility of the party, whose surety he is, that he must rely. If he is doubtful about these, he may require security from his principal for his own indemnity, before signing the bond. If, by his intervention as surety, an improper person has been imposed upon the Probate Judge in a position of trust, it is to that person and his estate that he must look for indemnity from any consequent loss to himself. For all errors, omissions, neglects and mistakes of that person he has agreed to be and must be held to be responsible. If there has been a fraudulent surcharge in the guardian's account to the detriment of the sureties, the proceedings in probate are so far vitiated by the fraud, that the sureties in a suit upon the bond against them, in a common law court, are at liberty to allege and prove the fraud in defence. *Baylies, Judge,* v. *Davis,* 1 Pick., 206.

But, practically, it would rarely happen that a man could be found, at once so foolish and so base as to assume a fictitious liability that must both immediately and ultimately rest upon himself, in order to fix a contingent responsibility upon those who had become sureties for his fidelity. And where a palpable error of any importance in an account is pointed out, a refusal to rectify it by a readjustment would go far to establish fraudulent collusion between the guardian and ward, which would relieve the sureties altogether. When errors in probate accounts are discovered, upon proper proceedings had in Probate Court, they may always be corrected upon the settlement of a subsequent account. Even when finally settled in the Supreme Court of Probate, application may be made in that Court for a rehearing, if injustice has been done. *Baylies, Judge,* v. *Davis, ubi supra.*

It is not then necessary to the safety of the surety that he should have the right of appeal from the decree of the Probate Judge, and the power, in the hands of a timid or dis-

trustful person, might unjustly burden the estate of the ward with extraordinary and useless expense. Nor is it conceived that the right would be one of much practical utility, inasmuch as these accounts are seldom settled in the presence or with the knowledge of the sureties, and the state of them is not often brought to their knowledge until long after the time within which an appeal should be claimed has elapsed.

But the right is to be determined, after all, not by considerations of propriety or expediency merely, but by construction of the statute conferring the right of appeal in such cases. It has long been settled that a party can be considered " aggrieved," so as to be entitled to an appeal, only when the decree operates upon his property, or bears upon his interest directly." *Deering* v. *Adams*, 34 Maine, 44, and cases there cited. The interest of the surety is only contingent upon the non-payment, by his principal, of the sum with which the principal, as guardian, stands charged. The surety has no interest whatever in the property, and can be affected only indirectly by the decree, the immediate liability being upon the accounting party, who cannot be presumed to be so neglectful of his own interest as to fail to appeal in proper cases. As we have already seen, the surety is amply protected in another forum, in case the parties directly interested collusively claim to charge · him for more than is justly due. The appeal, then, should be dismissed as improvidently claimed by a party who, according to the settled construction of the statute, cannot be considered as aggrieved by the decree.

But the questions raised by the appeal, being such as may probably arise in other cases, it may not be amiss to remark, that we see no reason to doubt the correctness of the conclusions reached by the Probate Judge, in any respect.

The objection to the jurisdiction of the Judge was probably founded upon the fact that the residence of the guardian and ward was in Danville, now included in the county of Androscoggin, and the appointment of the administra-

Woodbury *v.* Hammond.

trix on the estate of the guardian issued from the Probate Court in Androscoggin; but, by § 5 of c. 60, of the laws of 1854, establishing that county, it is provided that, "all business pending in the * * * Probate Courts * * * * in either of the four counties" out of which the new county was carved, "of which this county would have jurisdiction, shall be completed in said counties, the same as if this Act had not passed." And, although, by an additional Act, (chap. 87 of the laws of 1854,) matters pending in the S. J. Court and court of county commissioners, which would have fallen within the jurisdiction of the county of Androscoggin, if it had been established when the processes originated, were transferred with the papers pertaining thereto, no such provision was made with regard to probate matters, and the guardianship, in this case, having originated long before the separation of Danville from the county of Cumberland, the business thereof was by law to be completed in that county.

That the personal representative of a deceased guardian, appointed by the court having jurisdiction of his estate or will, is the proper person to settle his account of his guardianship, admits of no doubt. The practice is sanctioned by long and consistent usage, as well as natural and obvious propriety. No other person can be supposed to have such means for rendering an account that will do justice to all concerned, whether directly or remotely interested.

Nor does the fact that the estate of the deceased guardian has been represented insolvent, before the account was rendered, make any difference in the course of proceedings. The liability to account, unless discharged by the ward after arriving at full age, continues until a final account has been rendered and accepted. Neither the insolvency of the guardian or his estate, nor the lapse of six years after the ward arrives at the age of twenty-one, will operate as a release from that liability, or absolve the guardian or his personal representative from the duty to account.

The Probate Judge carefully discriminated, as he should

do, between the transactions arising between the guardian and ward, after she became of age, and those pertaining to the guardianship, and took cognizance of the latter only.

It rarely happens that an account can be settled precisely at the day when the ward attains his majority, and it follows that the final account must be adjusted subsequent to that period, or be left incomplete. It is no objection that the account is settled after the ward has become of age, so long as it embraces nothing except what accrued during the minority.

The question as to the effect of the statute of limitations, manifestly could only properly arise in a suit upon the bond, brought in a common law court.

No complaint is made that the Judge of Probate erred as to the rules and principles to be observed in the making up of the account, and they seem, upon reference to his opinion filed with the papers in this case, to have been carefully and accurately laid down.

Indeed, it is nowhere suggested by the appellant, that the estate of the guardian stands charged with any sums for which it is not justly accountable. His objections are, — to the jurisdiction of the Court, — to the rendering of an account after such a lapse of time from the expiration of the ward's minority, by the administratrix of the guardian, and after a representation of the insolvency of the guardian's estate.

None of these objections are tenable.

*Appeal dismissed with costs.*

Appleton, C. J., Kent, Walton, Danforth and Tapley, JJ., concurred.