MAINE SUPREME JUDICIAL COURT                     Reporter of Decisions
Decision:    2013 ME 37
Docket:      BCD-11-375
Argued:      May 9, 2012
Decided:     March 26, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
             JABAR, JJ.

# CENTRAL MAINE POWER COMPANY

v.

# DEVEREUX MARINE, INC., et al.

SAUFLEY, C.J.

[¶1]   In this appeal from the denial of a motion to attach, we are asked to decide whether, pursuant to the Maine Overhead High-voltage Line Safety Act, 35-A M.R.S. §§ 751-761 (2012), Central Maine Power Company, as the owner of an overhead high-voltage power line, may be entitled to be fully indemnified by Devereux Marine, Inc., for damages that CMP paid to compensate a severely injured employee of Devereux Marine for injuries that the employee suffered when he was electrocuted after a boat mast that he was holding came into contact with the power line.

[¶2]   CMP appeals from a denial of its motion to attach the property of Devereux and related entities, sought pursuant to M.R. Civ. P. 4A, entered in the Business and Consumer Docket (*Horton, J.*).  CMP contends that the court erred

2

when it interpreted 35-A M.R.S. § 760 as creating a statutory right of contribution, rather than a right to full indemnification, from an employer when (1) an employee is injured after bringing materials into contact with an overhead high-voltage power line, (2) the employer is determined to have violated the Act, and (3) the owner of the high-voltage line becomes liable to the employee. We conclude that full indemnification is required in such circumstances. Accordingly, we vacate the denial of the motion to attach and remand for further consideration of the motion in light of our interpretation of the Overhead High-voltage Line Safety Act.

## I. BACKGROUND

[¶3] Bryan Smith was an employee of Devereux Marine in 2002. *Smith v. Cent. Me. Power Co.*, 2010 ME 9, ¶ 5, 988 A.2d 968. While working at Devereux Marine, Smith was electrocuted when the mast he was lowering from a customer's sailboat came into contact with an overhead high-voltage power line owned by CMP. *Id.* Smith was severely burned and suffered significant permanent injuries. *Id.* This was not the first time that a sailboat had come into contact with the power line at Devereux Marine. *Id.* ¶ 4.

[¶4] Smith received workers' compensation benefits through Devereux and separately sued CMP for negligence in the Superior Court. *Id.* ¶¶ 1, 5. After a bench trial, the court (Penobscot County, *Murphy, J.*) found that, pursuant to the Public Utilities Commission's rules and regulations, CMP's power line should

have had a vertical clearance of 45.5 feet. *See id.* ¶¶ 6-7. The evidence produced at trial showed that the height of the power line was in fact only 30 feet. *See id.* ¶ 8. The court further found that (1) the accident would not have occurred if CMP had met the 45.5-foot vertical clearance requirement, (2) CMP failed to provide training on its vertical clearance standards to its employees, and (3) the negligence of Devereux Marine, as Smith's employer, was not the sole proximate cause of the accident.[1] *Id.* ¶¶ 6-7. Based on its findings, the court entered a judgment on November 14, 2008, awarding Smith $4,890,631 in damages. *Id.* ¶ 9. CMP appealed, and we affirmed the judgment. *Id.* ¶¶ 1, 25. CMP paid the judgment, including interest, in the amount of $6,012,795.69 on February 16, 2010. This claim for indemnification brought by CMP against Devereux Marine follows from that judgment.

---

[1] Devereux Marine was not a party to the original litigation because it had immunity pursuant to the Workers' Compensation Act, 39-A M.R.S. § 104 (2012) (stating that an employer who has secured the payment of compensation in conformity with the Act "is exempt from civil actions . . . at common law . . . involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries"). Whether that immunity has any effect on CMP's indemnification claim was not argued in the attachment proceeding or presented to us on appeal. *See Bond Builders, Inc. v. Commercial Union Ins. Co.*, 670 A.2d 1388, 1390 (Me. 1996) (addressing the limits of the exclusivity and immunity provisions of the Workers' Compensation Act); *cf. Moreno v. Entergy Corp.*, 105 So. 3d 40, 47-51 (La. 2012) (applying Louisiana's overhead power line safety act, which expressly eliminated the immunity that an employer would normally enjoy pursuant to that state's Workers' Compensation Act).

4

[¶5]    After paying Smith as required by the judgment, CMP filed a complaint against Devereux Marine and others[2] in the Superior Court. The complaint, as subsequently amended, alleged that CMP had a right to indemnification pursuant to the Act for the amount that it paid to Smith. Accompanying CMP's complaint was a motion for ex parte real estate attachment. The court (Cumberland County, *Humphrey, C.J.*) denied CMP's motion for ex parte attachment and granted the opportunity for a contested hearing on the attachment issue.

[¶6]    Devereux Marine filed an answer to CMP's complaint and a memorandum in opposition to CMP's motion to attach. Shortly thereafter, the case was transferred to the Business and Consumer Docket. The parties filed additional memoranda regarding attachment, and the court (*Horton, J.*) held a hearing on the issue. The court denied CMP's motion for attachment, interpreting the Act as creating a statutory right of contribution, as opposed to a right to indemnification. *See* 35-A M.R.S. § 760; *see also* 14 M.R.S. § 156 (2012). Accordingly, the court determined that CMP was not likely to recover a judgment "in an amount equal to

---

[2]  CMP's complaint for indemnification named Devereux Marine, Inc., Devereux Family LLC, Andrea Devereux, William Stevenson, and Andrea Devereux LLC, as defendants. In addition to claiming indemnification against all named parties, CMP's complaint included counts for piercing the corporate veil and fraudulent transfer. Those additional claims are not at issue in this appeal from the denial of attachment.

or greater than the aggregate sum" requested in its motion for attachment. M.R. Civ. P. 4A(c). CMP filed this appeal.

## II. DISCUSSION

### A. Standard of Review

[¶7] Orders granting or denying prejudgment attachment are immediately appealable pursuant to the collateral order exception to the final judgment rule. *See Centrix Bank & Trust v. Kehl*, 2012 ME 52, ¶ 13, 40 A.3d 942. We ordinarily review an order denying attachment for an abuse of discretion and clear error. *Sweeney v. Hope House, Inc.*, 656 A.2d 1215, 1216 (Me. 1995).

[¶8] In this matter of first impression, however, we are called upon to interpret the meaning of section 760 of the Overhead High-voltage Line Safety Act. We review the interpretation of a statute de novo as a question of law. *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner*, 2008 ME 149, ¶ 15, 957 A.2d 94. "The primary purpose in statutory interpretation is to give effect to the intent of the Legislature." *Id.* (quotation marks omitted). We "examine the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results." *Id.* (quotation marks omitted). "We also construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Id.* (quotation marks

6

omitted.) "All words in a statute are to be given meaning," and no words are to be treated as surplusage "if they can be reasonably construed." *Davis Forestry Prods., Inc. v. DownEast Power Co.*, 2011 ME 10, ¶ 9, 12 A.3d 1180 (quotation marks omitted). We will look to legislative history or other extraneous aids in interpretation of a statute only if the statute is ambiguous. *Id.*

B.    The Overhead High-voltage Line Safety Act

[¶9]  The Legislature enacted the Overhead High-voltage Line Safety Act, 35-A M.R.S. §§ 751-761, without debate, in 1995. *See* P.L. 1995, ch. 348 (effective Sept. 29, 1995). The Act was amended slightly in 1999, but that amendment has no bearing on this appeal. *See* P.L. 1999, ch. 398, § A-19 (effective Mar. 1, 2000) (codified at 35-A M.R.S. § 752(2) (2012)).

[¶10]  To enhance public safety, the Act prohibits any "person" from engaging in specific activities around an overhead high-voltage power line until that person notifies the line owner or operator, here CMP. *See* 35-A M.R.S. §§ 754, 757. The Act's definition of a "person" includes any "natural person, firm, business association, company, partnership, corporation or other legal entity." *Id.* § 752(3).

[¶11]  In the matter before us, the person prohibited from engaging in the specified activities near overhead high-voltage lines is Devereux Marine. A business such as Devereux is generally prohibited from undertaking any work or

activity that would bring a person, tool, or other material used by a person within ten feet of an overhead high-voltage line. *See id.* § 754(1). If the business intends to do work in that proximity to the line, the business must notify the owner or operator of the line at least seventy-two hours prior to commencing the work or activity. *See id.* § 757(1).[3] Upon notification, the business that intends to conduct the prohibited work or activity and the owner or operator of the line must negotiate "promptly and in good faith" to make precautionary safety arrangements to accommodate the work. *Id.* § 758(1).[4]

[¶12] Until the notification requirements are met, the business may not, either individually or through an agent or employee, perform work that may cause (A) a person to be placed within ten feet of the overhead high-voltage line, or (B) a tool or material used by a person to be brought within ten feet of the line. *Id.* § 754(1)(A), (B). Additionally, "A person may not, individually or through an agent or employee or as an agent or employee," erect, operate, maintain, transport, or store any "covered equipment or item" within ten feet of the line. *Id.* § 754(2).

---

[3] The Act's notification requirements include an exception for situations that include police, fire, and rescue emergencies. 35-A M.R.S. § 757(1) (2012).

[4] Although in some instances the person intending to do work around the line would be responsible for the costs associated with making safety modifications, *see* 35-A M.R.S. § 758(6) (2012), if the line has not been installed in conformity with the applicable edition of the National Electrical Safety Code, the line owner or operator is responsible for the costs of bringing the line into compliance, *see id.* § 758(6)(B).

The Act's definition of "covered equipment or items" includes "items such as ladders, scaffolds, *boat masts* and outriggers." *Id.* § 752(1) (emphasis added).

C.     Allocation of Liability in the Act

     1.     The Indemnification Statute

[¶13]   Because of the substantial possibility of personal injury or property damage arising from violations of the Act, the fiscal consequences for violating the Act can be severe:

**§ 760.  Indemnification**

> A person is liable to the owner or operator of the overhead high-voltage line and 3rd parties, if any, for *all damages* to facilities, injuries to persons and all costs, expenses and liabilities incurred by the owner or operator of the overhead high-voltage lines and 3rd parties, if any, as a result of any contact with an overhead high-voltage line if the person causes, permits or allows any work or activity in violation of a provision of this chapter and, as a result, a physical or electrical contact with an overhead high-voltage line occurs.

*Id.* § 760 (emphasis added).

[¶14]   The unambiguous language of section 760 shifts all fiscal responsibility for injuries and damages resulting from contact with an overhead high-voltage power line to the individual or entity that "causes, permits or allows any work or activity" in violation of the Act. *Id.*  The statute does not create an exception based on the negligence of the line owner or operator, here, CMP.  Nor does the statute grant an employer that is conducting work near an overhead

high-voltage line, such as Devereux, the right to an offset for the line owner or operator's negligence, or limit the line owner or operator only to contribution. Section 760 provides, in plain language, that a person who allows work or activity in or around a high-voltage power line in violation of the Act's provisions is liable to the owner of the line for "*all damages* to facilities, injuries to persons and *all costs, expenses and liabilities* incurred by the owner or operator." *Id.* (emphasis added).

[¶15] Although the statute explicitly anticipates that damages may be paid by the line owner based on its own civil liability, it specifies that the entity that "causes, permits or allows any work or activity in violation of a provision of this chapter" will be liable in full to the line owner for "all" of those damages. *Id.* The statute does not purport to apportion liability based on contributory fault, and we cannot interpret the statute in a way that would render the word "all" mere surplusage. *See Davis Forestry Prods., Inc.*, 2011 ME 10, ¶ 9, 12 A.3d 1180.

[¶16] The statute is introduced by the heading for section 760, which reads "Indemnification." Although abstracts of titles, chapters, and sections are not legal provisions, *see* 1 M.R.S. § 71(10) (2012); *cf. State v. Shepard*, 323 A.2d 587, 588 (Me. 1974) (noting that a statutory heading was consistent with the Legislature's intent, as embodied in the statutory text), the language that follows in the statute is

10

consistent with the heading and plainly does not address contribution or comparative fault.

[¶17]   Faced with difficult economic policy questions, the Legislature enacted statutes that allocate financial responsibility for injuries arising from contact with overhead high-voltage lines.  Section 760 provides that the individual or entity that is responsible for the activities taking place near an overhead high-voltage line, and who has the immediate ability to prevent grievous harm by complying with the Act, bears the financial responsibility for failing to take the required actions that would avoid that harm.  It is not unreasonable for the Legislature to have determined that the financial burden of compensating injured parties should be borne by the entity that causes work or other activities to be undertaken in violation of the proximity and notification provisions of the Act rather than a negligent line owner, who cannot be physically present where all lines exist and for whom fiscal responsibility could result in passing costs along to ratepayers.

[¶18]  Although construing the Act to require full indemnification may seem harsh, the entirety of the statutory scheme comprising the Act places a particular burden on employers of individuals who work near overhead high-voltage lines to comply with the Act's provisions or face penalties.  Specifically, the Act places a "duty and responsibility" on employers of individuals using covered equipment

and items to acquaint themselves and their employees with the provisions of the Act, 35-A M.R.S. § 753; it requires notification of the line owner and the placement of warning signs before covered equipment or items may be operated or stored within ten feet of a power line, *id.* §§ 754(2), 756, 757, or work may be performed that may cause a person, tool, or other material used by a person to be brought within ten feet of a power line, *id.* §§ 754(1), 756, 757; and it authorizes a civil penalty for every day that such an employer is in violation of the Act, *id.* § 759.[5]

[¶19] Because the potential for grave, and even fatal, injury is high when employees work near power lines, the Legislature's enactment serves to motivate employers arranging for on-site work to take every required measure to avoid injury.[6] In this context, it is reasonable that the Legislature would place the fiscal burden for any injury resulting from violations of these provisions on the violator

---

[5] The Act includes an enforcement provision that allows for the assessment of a civil penalty of up to $1,000 for each day a person causes, permits, or allows work or any other activity to occur that is in violation of the Act's provisions. 35-A M.R.S. § 759 (2012).

[6] The Legislature has enacted a similar statute to protect utilities' underground facilities that requires notification to a centralized system prior to commencing excavation activities. *See* 23 M.R.S. § 3360-A (2012). As an incentive to notify underground facility operators of planned excavation activity, section 3360-A(6-B) provides:

> An excavation that is made without the excavator providing any or all of the notices required by this section that results in any damage to an underground facility or facilities is prima facie evidence in any civil or administrative proceeding that the damage was caused by the negligence of the excavator.

12

that is in the best position to ensure safety through compliance with the Act. *See id.* § 760.

2. The Inapplicability of the Comparative Fault Statute

[¶20] Notwithstanding the language of section 760, Devereux urges us to apply principles of comparative fault articulated in 14 M.R.S. § 156. That statute provides:

> When any person suffers death or damage as a result partly of that person's own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage may not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof must be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.
>
> . . . .
>
> Fault means negligence, breach of statutory duty or other act or omission that gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.
>
> If such claimant is found by the jury to be equally at fault, the claimant may not recover.
>
> *In a case involving multiparty defendants, each defendant is jointly and severally liable to the plaintiff for the full amount of the plaintiff's damages.* However, any defendant has the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant.

*Id.* (emphasis added).

[¶21]   This is a circumstance in which Devereux could not have been a "multiparty defendant" in a suit by Smith.  Devereux could not be sued by Smith because it was "exempt from civil actions . . . at common law . . . involving personal injuries sustained by an employee arising out of and in the course of employment."   39-A M.R.S. § 104 (2012).   Therefore, Devereux was never a co-defendant with CMP, and no opportunity arose for a fact-finder to determine the percentage of fault as between co-defendants.

[¶22]   Devereux must therefore assert that, pursuant to the first paragraph of section 156, CMP would be considered the "person suffering the damage," whose recovery would be "reduced to such extent as [a] jury thinks just and equitable having regard to the claimant's [here, CMP's] share in the responsibility for the damage."  To interpret section 760 statute to allow for proportioned liability on the basis of the broadly applicable statute governing comparative fault would, however, violate the fundamental rule of statutory construction that we favor the application of a specific statutory provision over the application of a more general provision when there is any inconsistency.  *See Fleet Nat'l Bank v. Liberty*, 2004 ME 36, ¶ 10, 845 A.2d 1183.  The comparative fault statute cannot be interpreted to nullify the narrowly applicable indemnification provision of section 760, which explicitly contemplates that the line owner or operator may independently become liable for damages and nonetheless requires indemnification of the line owner or

operator for "all . . . injuries to persons" by a person who violates the Act by engaging in work that brings a person or materials within ten feet of the overhead high-voltage line without notifying the line owner or operator, resulting in contact with the line. *See* 35-A M.R.S. §§ 754(1), 757(1), 760.

[¶23] If the Legislature intended to allow or provide for allocated liability instead of indemnification in section 760, it could have used clear language to achieve this goal.[7] In a similar statute, which was enacted to protect the public from fires or explosions that may be caused by natural gas leaks, the Legislature has done just that. *See* 14 M.R.S. § 165 (2012). The statute provides exceptions to what would otherwise be strict liability for a natural gas company or a natural gas

---

[7] Some other state Legislatures have explicitly created a right to contribution in their overhead high-voltage power line statutes. Mississippi's statute creates

> a right of action on behalf of any electric utility which is required to pay any sum for injury or death of any person resulting from contact with a high voltage overhead line against any person whose negligence is a proximate contributing cause . . . for that portion . . . *attributable to the negligence of such person, however, the electric utility may not recover any portion of such sum which is attributable to its own negligence.*

Miss. Code Ann. § 45-15-13(2) (Westlaw through 2012 Reg. Sess.) (emphasis added). Missouri's statute similarly includes explicit language that "the public utility shall have the *right of contribution* against any such violator [of the Overhead Power Line Safety Act]." Mo. Ann. Stat. § 319.085 (Westlaw through 2012 2d Reg. Sess.) (emphasis added).

As another example, Alaska's high-voltage power line safety act provides that a "violator is liable to the owner or operator of the high voltage line . . . for all damage to the facilities and for all liability incurred by the owner or operator *as a result of the unlawful activities.*" Alaska Stat. Ann. § 18.60.685(b) (Westlaw through legislation effective Mar. 1, 2013, passed during 2013 1st Reg. Sess.) (emphasis added). Because of the emphasized language, the Supreme Court of Alaska interpreted this statute as adopting a comparative causation approach, which would require a person in violation of the statute to indemnify a utility owner "only for that portion of the total liability caused by the violator's unlawful activities and not for that portion caused by the utility's negligence." *Atwater v. Matanuska Elec. Ass'n, Inc.*, 727 P.2d 774, 778 (Alaska 1986). Maine's indemnification statute contains no such limiting language.

pipeline company that stores, transports, or distributes natural gas when a death or injury due to explosions or fire results from the actions of a third party:

**§ 165.  Liability of those who store or distribute natural gas**

> **1. Liability without proof of negligence.**  A natural gas company or an intrastate or interstate natural gas pipeline company that stores, transports or distributes natural gas *is liable for all acts and omissions of its servants and agents* that cause death or injury to persons or damage to property resulting from explosions or fire caused by natural gas escaping from the natural gas storage, transportation or distribution system under its control or from explosions or fire caused by defects in the natural gas storage, transportation and distribution systems under its control.
>
> . . . .
>
> **3. Exceptions.**  The company is not liable for death or injury to persons or damage to property caused by:
>
> . . . .
>
> **C.** *Intervening fault of a 3rd party for whose actions the company is not legally liable. If death or injury to persons or damage to property is caused by the combined fault of the company and other parties, the liability of the company is joint and several with those other parties.*

*Id.* (emphasis added).

[¶24]   In contrast to this explicit apportioning of liability,[8] the statutes applicable to overhead high-voltage lines provide for full indemnification of the line owner or operator by the entity that allowed work to take place within ten feet

---

[8]  *See also* 28-A M.R.S. § 2512 (2012) (apportioning liability by explicitly creating several but not joint liability between intoxicated individuals and servers of alcoholic beverages).

16

of the overhead high-voltage line without providing notification. Unlike the natural gas statute, the overhead high-voltage line statute does not provide for offsets, for joint or several liability, or for the determination of contributory fault. We must apply that law as written.

3.      Persuasive Authority from Other States with Similar Statutes

[¶25] To be sure, the Legislature's decision to require full indemnification from the violator of the Act could, because of the extraordinary potential for injury or death, result in substantial liability for those who allow or permit work or other activities that may cause materials to come within ten feet of an overhead high-voltage line without notifying the owner or operator of the line. When we look to the jurisprudence in other states that have adopted statutes related to overhead high-voltage line safety,[9] as the parties have suggested, we find that the

---

[9]  *See* Alaska Stat. Ann. §§ 18.60.670-.695 (Westlaw through legislation effective Mar. 1, 2013, passed during 2013 1st Reg. Sess.); Ariz. Rev. Stat. Ann. §§ 40-360.41 to .45 (Westlaw through 2d Reg. Sess. 2012); Ark. Code Ann. §§ 11-5-301 to -309 (Westlaw through 2012 Fisc. Sess. & emerg. acts of 2013 Reg. Sess.); Colo. Rev. Stat. Ann. §§ 9-2.5-101 to -106 (Westlaw through chs. 1-4, 6 of 1st Reg. Sess. 2013); Del. Code Ann. tit. 16, §§ 7401B-7408B (Westlaw through 79 Laws 2013, chs. 1-4); Ga. Code Ann. §§ 46-3-30 to -40 (Westlaw through 2012 Reg. Sess.); Idaho Code Ann. §§ 55-2401 to -2405 (Westlaw through 2013 Sess., chs. 1, 2, 4, 17, 20, 22 effective on or before July 1, 2013); Kan. Stat. Ann. §§ 66-1709 to -1716 (Westlaw through 2012 Reg. Sess.); La. Rev. Stat. Ann. §§ 45:141-:146 (Westlaw through 2012 Reg. Sess.); Mass. Ann. Laws ch. 166, §§ 21A-21G (LexisNexis 2002); Miss. Code Ann. §§ 45-15-1 to -15 (Westlaw through 2012 Reg. Sess.); Mo. Ann. Stat. §§ 319.075-.090 (Westlaw through 2012 2d Reg. Sess.); Nev. Rev. Stat. Ann. §§ 455.200-.250 (Westlaw through 2011 76th Reg. Sess.); N.C. Gen. Stat. Ann. §§ 95-229.5 to .13 (Westlaw through S.L. 2013-7, excluding ch. 6 of 2013 Reg. Sess.); Okla. Stat. Ann. tit. 63, §§ 981-987 (Westlaw through 2d Reg. Sess. 2012); Or. Rev. Stat. Ann. § 757.800-.805 (Westlaw through 2012 1st Spec. Sess.); S.D. Codified Laws §§ 49-32-1 to -20 (Westlaw through 2012 Reg. Sess.); Tenn. Code Ann. §§ 50-3-1001 to -1008 (Westlaw through 2012 2d Reg. Sess.); Tex. Health & Safety Code Ann. §§ 752.001 to .008 (Westlaw through 2011 Reg. Sess. & 1st Called Sess. of 82d Legis.); Utah Code Ann. §§ 54-8c-1 to -6 (Westlaw through 2012 4th Spec. Sess.);

states with Acts most similar to ours have interpreted those statutes as we do, based on their plain meaning, to require full indemnification notwithstanding the heavy burden on those conducting work near overhead high-voltage lines.

[¶26]   Interpreting statutory language similar to Maine's, the Court of Appeals of Arizona held that Arizona's statute transfers all responsibility for a worker's personal injuries from the negligent owner of the power line to the employer who allowed work to occur near the line in violation of statute.  *Ariz. Pub. Serv. Co. v. Shea*, 742 P.2d 851, 857-58 (Ariz. Ct. App. 1987) (interpreting Ariz. Rev. Stat. Ann. § 40-360.44(B) (Westlaw through 2d Reg. Sess. 2012)). Pursuant to Ariz. Rev. Stat. Ann. § 40-360.44(B), which has not been amended since the Arizona Court of Appeals decision, "the person or business entity violating this article is liable to the public utility operating the high voltage overhead line for *all damages to the facilities and all costs and expenses, including damages to third persons, incurred by the public utility as a result of the contact*." (Emphasis added.)

[¶27]   The Texas High Voltage Overhead Lines Act also contains indemnification language that is similar to that of Maine's Act.  *Compare* Tex.

Va. Code. Ann. §§ 59.1-406 to -414 (Westlaw through 2012 Reg. Sess., 2012 Spec. Sess. I, and 2013 Reg. Sess. cc. 2-3); Wyo. Stat. Ann. §§ 37-3-301 to -306 (Westlaw through 2012 Budget Sess.).

18

Health & Safety Code Ann. § 752.008 (Westlaw through 2011 Reg. Sess. & 1st

Called Sess. of 82d Legis.) *with* 35-A M.R.S. § 760.  The Texas statute provides:

> If a violation of this chapter results in physical or electrical contact with a high voltage overhead line, the person, firm, corporation, or association that committed the violation is liable to the owner or operator of the line for *all damages to the facilities and for all liability that the owner or operator incurs as a result of the contact.*

Tex. Health & Safety Code Ann. § 752.008 (emphasis added).  In applying this

statute's indemnification clause in a situation similar to the instant case, where the

utility's power lines were hanging below the minimum height required by Texas

law, the Texas Court of Appeals held that, because the statute allows for

indemnification "for all liability" incurred by the utility, the provision applies even

in "circumstances in which the utility's own actions contributed to the damage

caused by contact with one of its lines."  *AEP Tex. N. Co. v. SPA Pipe, Inc.*,

2008 Tex. App. LEXIS 9269, at *27 (Tex. App. Dec. 12, 2008).

[¶28]  Also comparable to Maine's statute, Louisiana's Overhead Power

Line Safety Act provides that, if a violation of the act results in contact with a

power line, the violator "shall be liable to the owner or operator of the high voltage

overhead line for *all damages, costs, or expenses* incurred by the owner or operator

as a result of the contact."  La. Rev. Stat. Ann. § 45:144(A) (Westlaw through

2012 Reg. Sess.) (emphasis added).  The statute specifies that it shall not "be

construed to alter, amend, restrict, or limit the liability of an owner or operator of the high voltage line under current law," La. Rev. Stat. Ann. § 45:144(B) (Westlaw through 2012 Reg. Sess.), which the Supreme Court of Louisiana recently interpreted to mean that the owner of the line may recover from a violator "even for the utility company's own negligence," *Moreno v. Entergy Corp.*, 105 So. 3d 40, 50 (La. 2012).

[¶29]   The statutory basis for indemnification in each of these states is similar to Maine's.   Given such statutory language, anything short of full indemnification "would directly contravene the clear legislative directive requiring employers to contact utilities and enter into safety agreements before requiring their employees to engage in work on or near active power lines and would encourage rather than discourage the initiation of hazardous work near power lines." *AEP Tex. N. Co.*, 2008 Tex. App. LEXIS 9269, at *33.

## III.  CONCLUSION

[¶30]   If it is determined that Devereux Marine required or allowed its employee, Smith, to lower the boat's mast in close proximity to CMP's power line without first complying with the Act's requirements, *see generally* 35-A M.R.S. §§ 754-758, Devereux Marine could be found to have "cause[d], permit[ted] or allow[ed] any work or activity in violation of" the Act, *id.* § 760.  Pursuant to the plain language of the statute, Devereux Marine would then be responsible for

indemnifying CMP for "*all* damages to facilities, injuries to persons and *all* costs, expenses and liabilities incurred by" CMP due to Smith's contact with the line. *Id.* (emphasis added).

[¶31]  Because the plain language of the statute does provide for full indemnification by an entity that causes, permits, or allows work in violation of the Act, even in cases where the owner or operator of an overhead high-voltage line may have been negligent, we vacate the court's judgment denying the motion for attachment and remand for further proceedings consistent with this opinion.

The entry is:

> Judgment vacated.  Remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

John B. Lucy, Esq., Richardson, Whitman, Large & Badger, Bangor, and Henry Sorett, Esq., Brickley, Sears & Sorett, Boston, Massachusetts, for appellant Central Maine Power Company

Barry K. Mills, Esq., Hale & Hamlin, LLC, Ellsworth, for appellees Devereux Marine, Inc., Devereux Family LLC, Andrea Devereux, William Stevenson, and Andrea Devereux, LLC

Christian T. Chandler, Esq., James L. Costello, Esq., and Benjamin M. Leoni, Esq., Curtis Thaxter LLC, Portland, for amicus curiae Bangor Hydro Electric Company

Christian T. Chandler, Esq., Curtis Thaxter LLC, Portland, and Kenneth P. Carter, Baker Donelson Bearman Caldwell & Berkowitz, PC, New Orleans, Louisiana, for amicus curiae Edison Electric Institute


**At oral argument:**

Henry Sorett, Esq., for appellant Central Maine Power Company

Barry Mills, Esq., for appellees Devereux Marine, Inc., Devereux Family LLC, Andrea Devereux, William Stevenson, and Andrea Devereux, LLC

Business and Consumer Docket docket number CV-2011-13
FOR CLERK REFERENCE ONLY