MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2013 ME 103
Docket:       Wal-13-175
Argued:       October 7, 2013
Decided:      November 26, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>LEVY</u>, SILVER, MEAD, GORMAN and JABAR, JJ.

ESTATE OF JOHN JENNINGS

v.

WILLIAM CUMMING et al.

LEVY, J.

[¶1]  George Jennings is the surety of a probate bond for the conservatorship of his brother John Jennings's estate.[1]  George appeals from a default judgment entered in the Superior Court (Waldo County, *R. Murray, J.*) finding George liable for the breach of the bond by the conservator of John's estate, William Cumming. George contends that the judgment against him is void for lack of subject matter jurisdiction.  We disagree and affirm the judgment.

I. BACKGROUND

[¶2]  In 2006, William Cumming, a friend of the Jennings family, was appointed by the Waldo County Probate Court (*Longley, J.*) as conservator for John's estate.  George and Janetta Jennings, John's brother and sister, signed a

---

[1]  John Jennings passed away after the filing of the notice of appeal but before oral argument was held.

2

bond for the conservatorship in the amount of $282,922, the estimated value of John's estate at that time.[2]

[¶3]  During the term of the conservatorship, Cumming used his power as the conservator to write himself reimbursement checks from John's accounts.  The first accounting filed with the Probate Court in May 2007 showed that Cumming had reimbursed himself $37,584.25 for money he had purportedly lent to John.  The Probate Court approved this first accounting.  In December 2007, Cumming made a second reimbursement to himself in the amount of $41,572.33, again purportedly for a loan to John.  John contested the amount and on December 10, 2007, filed a petition in the Probate Court to terminate Cumming's conservatorship.  Cumming filed a petition to resign as conservator soon thereafter.

[¶4]  Although Cumming conceded in the Probate Court proceeding that he misappropriated funds from John's estate, the parties disputed the amount that was misappropriated.  In September 2008, the Probate Court held a hearing on Cumming's final accounting of the conservatorship but made no finding as to the disputed amount.

---

[2]  Title 18-A M.R.S. § 5-411(a) (2012) provides that:

> The Probate Court shall require a conservator of an estate of $25,000 or more to furnish a bond conditioned upon faithful discharge of all duties of the trust according to law, with sureties as it specifies, unless the court makes a specific finding as to why a bond should not be required.

[¶5]  Meanwhile, in July 2008, John initiated a second suit in the Superior Court against Cumming for breach of fiduciary duty, various other torts, and breach of the obligations of the probate bond, among other claims.  John alleged that Cumming owed him $58,013.67 in misappropriated funds plus interest, costs, and attorney fees.  John also requested punitive damages.  The complaint named George and Janetta, both sureties of the probate bond, as co-defendants.

[¶6]  In March 2009, Cumming filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Maine.  In June 2010, the Bankruptcy Court entered an order of compromise of claim in which it ordered Cumming to pay John $30,000 within two years of the order's date of entry without interest accruing; or, if Cumming failed to pay the amount within two years, $45,000 with interest accruing at the prevailing post-judgment rate.

[¶7]  More than a year later, in October 2011, the Superior Court held a bench trial on John's suit, which John, Janetta, and Cumming attended.[3]  Despite proper notice, George failed to appear.  The court found that "there were unaccounted for funds in the total amount of $58,403.67 directly resulting from Defendant Cumming's mishandling of [John's] assets," that "[d]efendants Janetta and George Jennings both signed a Bond for Conservator . . . obligating them to

---

[3]  At trial John formally dismissed Cumming as a defendant in the Superior Court proceeding without objection from Janetta.

secure the faithful performance of William Cumming in the discharge of his duties as conservator," and that "Cumming failed to so discharge his conservator duties." At trial, John and Janetta reached an agreement that, prior to seeking payment from Janetta for any amounts due under the bond and the bankruptcy order, John would first seek payment from George and take all reasonable and necessary steps to execute against George's properties. On November 2, 2011, the Superior Court incorporated this agreement in its default judgment entered against George in the amount of $58,403.67, plus interest and costs.

[¶8] After the proceedings in the Superior Court concluded, all parties agreed to substitute the payment scheme in the Bankruptcy Court's order of compromise for the disputed amount in the Probate Court's final accounting, which had been pending since 2008. The Probate Court subsequently approved the final accounting and terminated the conservatorship.

[¶9] In November 2012, George filed a motion to set aside the default judgment pursuant to M.R. Civ. P. 60(b)(4),[4] contending that the Superior Court lacked subject matter jurisdiction. The Superior Court denied George's motion, and this appeal followed.

---

[4] George in fact filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(1), but because a judgment had already been entered, the court sua sponte decided to treat the motion as one to set aside the judgment pursuant to M.R. Civ. P. 60(b)(4).

## II. DISCUSSION

[¶10]   We review de novo a court's denial of a motion pursuant to M.R. Civ. P. 60(b)(4) to set aside a judgment due to a jurisdictional defect. *Town of Carmel v. McSorley*, 2002 ME 33, ¶ 5, 791 A.2d 102.  George contends that the Superior Court lacked subject matter jurisdiction to hear John's suit against Cumming and George because (A) the Probate Court has exclusive jurisdiction to adjudicate actions on a conservator's misconduct and on surety liability pursuant to 18-A M.R.S. § 5-402 (2012), and (B) John failed to obtain the probate judge's authorization prior to commencing suit in the Superior Court as required by 18-A M.R.S. § 8-313 (2012).[5]   We begin with George's contention that the Superior Court lacked subject matter jurisdiction.

A.     Jurisdiction of the Superior Court

[¶11]   The Probate Court's exclusive and concurrent jurisdiction in matters concerning conservatorships is set forth in 18-A M.R.S. § 5-402:

> After the service of notice in a proceeding seeking the appointment of a conservator or other protective order and until termination of the proceeding, the court in which the petition is filed has:

---

[5]  George further contends that the Probate Court's approval of the conservator's first accounting bars an action against the surety on that amount.  Because George failed to assert to the Superior Court that the Probate Court's approval of the first accounting was relevant to the Superior Court's determination of surety liability, this issue is not preserved for appellate review.  *See* Alexander*, Maine Appellate Practice* § 402(a) at 242–43 (4th ed. 2013); *see also Foster v. Oral Surgery Assocs., 2008* ME 21, ¶ 22, 940 A.2d 1102 ("An issue raised for the first time on appeal is not properly preserved for appellate review.").

6

(1) Exclusive jurisdiction to determine the need for a conservator or other protective order until the proceedings are terminated;

(2) Exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of this State shall be managed, expended or distributed to or for the use of the protected person or any of his dependents;

(3) Concurrent jurisdiction to determine the validity of claims against the person or estate of the protected person and his title to any property or claim.

18-A M.R.S. § 5-402. George contends that the question of whether Cumming misappropriated funds from John's estate and the determination of the amount in dispute concern the administration and management of John's estate, and are therefore within the Probate Court's exclusive jurisdiction pursuant to section 5-402(2). John responds that the dispute at issue concerns John's "claims" against the estate, and therefore is within the Superior Court's concurrent jurisdiction under section 5-402(3).

[¶12] We review the interpretation of a statute de novo as a question of law. *Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262. Here, Cumming admitted to misappropriating funds from John's accounts. Because the nature of the dispute is that of an individual against his conservator, John's suit against Cumming falls squarely within the plain meaning of a "claim" as that term is used in section 5-402(3). *See* 18-A M.R.S. § 1-201(4) (2012) (defining "claims" broadly to include liabilities of the estate arising after the

appointment of a conservator); *see also* Webster II's Dictionary (1984) (defining "claim" as "[a] demand for something as one's rightful due"). We are not persuaded by George's characterization of John's suit as one related to the management of John's estate pursuant to section 5-402(2). We therefore conclude that the Superior Court has concurrent jurisdiction to hear an action on a conservator's misconduct.

[¶13] George further contends that the suit between John and George does not constitute a "claim" against the estate pursuant to section 5-402(3) because that section does not address actions against sureties of probate bonds. A separate provision of the Probate Code already expressly grants the Superior Court concurrent jurisdiction to hear these actions:

> Actions or proceedings on probate bonds of any kind payable to the judge may be commenced by any person interested in the estate or other matter for which the bond was given, either in the probate court in which the bond was filed or in the Superior Court of that county.

18-A M.R.S. § 8-309 (2012).

[¶14] Read in harmony, sections 5-402 and 8-309 thus confer concurrent jurisdiction on the Superior Court to adjudicate actions both on a conservator's misconduct and against sureties of probate bonds. This reading of these provisions comports with the Legislature's intent in granting concurrent jurisdiction to both the Superior and Probate courts to "provide for the more efficient and integrated

8

handling of probate matters." Maine Probate Law Revision Commission, Report to the 109th Maine Legislature & Summary of the Commission's Study & Recommendations Concerning Probate Law 29 (Sept. 1978); *see also Guardianship of Zachary Z.*, 677 A.2d 550, 553 (Me. 1996) (noting that the Probate Code "subscribe[s] generally to judicial efficiency and simplification of process."). In addition, allowing concurrent jurisdiction in the Superior Court guarantees the parties' right to a jury trial in those actions in which either party desires a jury trial. *See* Me. Const. art. I, § 20 ("In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury . . . ."); *Plimpton v. Gerrard*, 668 A.2d 882, 887 (Me. 1995) (noting that a plaintiff seeking damages cannot demand a jury trial in the Probate Court). Having the case adjudicated in the Superior Court likewise protects the rights of the surety, who, as a party to the suit, can assert affirmative defenses and counterclaims directly against the plaintiff. *See, e.g.*, *Woodbury v. Hammond*, 54 Me. 332, 340-42 (1866) (holding that, under the probate statute in effect at the time, a surety could not appeal a judgment entered in a probate proceeding on grounds that the plaintiff committed fraud but could do so in a common law court where he was "amply protected").

[¶15] In sum, our recognition of the Superior Court's concurrent jurisdiction pursuant to 18-A M.R.S. § 5-402(3) over suits based on a conservator's

misconduct is consistent with the plain language of 18-A M.R.S. § 8-309 as well as the Legislature's intent to promote judicial economy in the probate system and protect the constitutional right to a jury trial.

B.  Judicial Authorization by the Probate Judge

[¶16]  George contends that John's suit suffered a second jurisdictional defect: John failed to acquire the probate judge's authorization prior to commencing suit in the Superior Court as required by 18-A M.R.S. § 8-313. Section 8-313 concerns the probate judge's discretion to authorize an action on the bond for the benefit of the estate:

> The judge of probate *may expressly authorize* or instruct a personal representative or other fiduciary, *at the judge's discretion* or on the complaint of any interested person, to commence an action on the bond for the benefit of the estate.

18-A M.R.S. § 8-313 (emphasis added).  Although the statute employs the word "may" instead of "shall," thus implying that authorization is not required, George contends that the word "may" refers not to the permissiveness of the authorization but, rather, to the probate judge's discretion to give or not give the required authorization.  Where statutory language is ambiguous, we look to legislative history to aid in the interpretation of a statute.  *Cent. Me. Power Co.*, 2013 ME 37, ¶ 8, 68 A.3d 1262.  Here, because we find that the statutory language is

ambiguous, we look to the history of section 8-313 and conclude that probate judicial authorization is not required.

[¶17] The former Probate Code, even as it mandated that actions on bonds be brought in the name of the probate judge,[6] did not require a plaintiff to obtain the judge's permission prior to bringing suit:

> Any person interested personally or in any official capacity in a probate bond . . . may originate an action on such bond . . . without applying to the judge whose name was used in the bond . . . .

18 M.R.S.A. § 451 (1964).[7] A separate provision contained language similar to the current section 8-313 regarding the probate judge's discretion to grant authorization: "The judge of probate may expressly authorize or instruct an administrator . . . to commence an action on a probate bond for the benefit of the estate . . . ." 18 M.R.S.A § 501 (1964).[8] The former Probate Code thus made clear that probate judicial authorization was permissive, not mandatory, for a suit on bonds. *See id.* § 451.

---

[6] "Actions on probate bonds of any kind payable to the judge shall be originally commenced in the Superior Court for the county where said judge belongs and in his name . . . ." 18 M.R.S.A. § 401 (1964). This section was repealed and replaced by P.L. 1979, ch. 540, §§ 1, 24-C (effective Jan. 1, 1981) (codified at 18-A M.R.S. § 8-309 (2012)).

[7] Title 18 M.R.S.A. § 451 (1964) was repealed by P.L. 1979, ch. 540, § 24-C (effective Jan. 1, 1981).

[8] Title 18 M.R.S.A. § 501 (1964) was repealed and replaced by P.L. 1979, ch. 540, §§ 1, 24-C (effective Jan. 1, 1981) (codified at 18-A M.R.S. § 8-313 (2012)). Section 8-313 was amended by P.L. 2003, ch. 618, § B-16 (effective July 1, 2005), though not in any way that affects this appeal.

[¶18]   The current Probate Code, enacted in 1979, did not change this statutory structure.   Nothing in the current Code's legislative history supports George's contention that judicial authorization by the probate judge is mandatory in every case, and George offers no authority to the contrary.   We therefore conclude that section 8-313 does not require the probate judge's authorization before a suit on the bond can be brought in the Superior Court.

The entry is:

Judgment affirmed.

---

**On the briefs:**

David Glasser, Esq., Camden, for appellant George Jennings

Christopher K. MacLean, Esq., Elliott & MacLean, LLP, Camden, for appellee Estate of John Jennings

**At oral argument:**

David Glasser, Esq., for appellant George Jennings

Sarah I. Gilbert, Esq., Elliott & MacLean, LLP, Camden, for appellee Estate of John Jennings